No. 09-4475-cr
*USA v. Conca*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2010

(Submitted: November 16, 2010          Decided: February 15 , 2011)

Docket No. 09-4475-cr

UNITED STATES OF AMERICA,

   *Appellee*,

   – v. –

MARC A. CONCA,

   *Defendant-Appellant.*

Before:  MINER, STRAUB, AND LIVINGSTON, *Circuit Judges*.

   Appeal from a judgment of conviction and sentence entered October 20, 2009, following a guilty plea, in the United States District Court for the Northern District of New York (McAvoy, J.), convicting defendant-appellant of one count of failing to register as a sex offender after traveling in interstate commerce and sentencing him principally to a term of imprisonment of 78 months, the District Court, over objection, having classified a youthful offender adjudication as a prior adult conviction in calculating defendant-appellant's criminal history score under the Sentencing Guidelines.

   Affirmed.

            Richard D. Beliss, Rajit S. Dosanjh, Assistant United States Attorneys (for Richard S. Hartunian, United States Attorney for the Northern District of New York), Syracuse, New York, for Appellee.

            Paul Evangelista, Assistant Federal Public Defender (Molly Corbett, on the brief), for Alexander Bunin, Federal Public Defender, Northern District of New York, Albany, New York, for Defendant-Appellant.

MINER, *Circuit Judge*:

Defendant-appellant Marc A. Conca appeals from a judgment of conviction and sentence entered October 20, 2009, following a guilty plea, in the United States District Court for the Northern District of New York (McAvoy, J.) convicting him of one count of failing to register as a sex offender after traveling in interstate commerce and sentencing him principally to a 78-month term of imprisonment. In arriving at this sentence under the Sentencing Guidelines, the District Court classified a youthful offender adjudication as a prior adult conviction in calculating Conca's criminal history score. As he did in the District Court, Conca here challenges that classification. For the reasons that follow, we affirm.

**BACKGROUND**

I.     The Offense of Conviction

In a one-count indictment dated February 26, 2009 (the "Indictment"), a grand jury impaneled in the Northern District of New York issued the following charge against Conca:

> That on or between about September, 2008, and January 23, 2009, in the State and Northern District of New York and elsewhere, **Marc A. CONCA**, the defendant herein, an individual required to register under the Sex Offender Registration and Notification Act, did knowingly travel in interstate commerce, from the State of Oklahoma to the Northern District of New York, and knowingly failed to register as a sex offender in the States of Oklahoma and New York and knowingly failed to update his registration in the State of Texas as required by law.

> In violation of Title 18, United States Code, Section 2250(a).

After entering a plea of not guilty to the Indictment, Conca entered into a plea agreement with the government dated April 22, 2009, (the "Agreement") whereby he agreed to withdraw his not guilty plea and enter a plea of guilty to the Indictment. In the Agreement, Conca acknowledged that he was subject to various penalties, including a

maximum term of imprisonment of ten years, supervised release of not less than five years to life, the consequences of violation of the terms of supervised release, a maximum fine of $250,000, a special assessment of $100, and interest and penalties consequent to non-payment of any financial obligations imposed. Conca also acknowledged his understanding of the factors to be considered by the court in imposing sentence as well as the elements of the offense with which he was charged.

The Agreement set forth the factual basis for Conca's plea as follows: On June 20, 2007, Conca was sentenced to imprisonment for two years upon his conviction in Texas for sexual assault, a felony under the Texas Penal Code. Because of the conviction, Conca was required to register as a sex offender under the Texas Sexual Offender Registration Program upon his release from prison. TEX. CODE CRIM. PROC. ANN. art. 62.051 (West 2011). See generally Sexual Offender Registration Program, 1991 Tex. Sess. Law Serv. Ch. 572 (S.B. 259) (Sept. 1, 1991). The statute also required Conca to update his registration whenever he changed his address. TEX. CODE CRIM. PROC. ANN. art. 62.055.

At the time he was released from state prison in Texas, on April 18, 2008, Conca signed a "Pre-Release Notification Form Texas Sex Offender Registration Program." See id. art. 62.053(a). This document described Conca's duties as a convicted sex offender, including the duty to report any intended move to a new residence within or outside the state within seven days prior to moving. Relocation to another state also required Conca to register, within ten days of his arrival in that state, with the law enforcement agency properly designated to receive such registration information in that state. Also on April 18, 2008, Conca signed a separate form entitled "Sex Offender Verification," in which he

acknowledged that his sex offender registration obligations would apply throughout his lifetime.

In May 2008, Conca left Texas and traveled to various places, including Oklahoma City, where he eventually rented an apartment in September 2008. While there, he was briefly employed in a restaurant but departed the State of Oklahoma in mid-October 2008. From that time until January 2009, according to the Agreement, Conca "lived a transient existence in numerous southeastern states." On January 3, 2009, Conca arrived by Greyhound bus in Amsterdam, New York, where he lived with his sister until January 11, 2009. On that date, he moved to his girlfriend's house in Gloversville, New York. Conca resided at his girlfriend's house until January 23, 2009, when he was arrested on an unrelated warrant by the Gloversville City Police Department.

The Agreement includes the following with respect to the offense of conviction:

Records show that from April 18, 2008 up until January 23, 2009 (the date on which CONCA was arrested by the Gloversville City Police Department) CONCA did not update his registration in Texas and failed to register as a sex offender in any state including the States of Oklahoma and New York. CONCA knowingly failed to update his registration in Texas, and failed to register in a timely manner in the States of Oklahoma and New York, as is required by the Sex Offender Registration and Notification Act.

II.    The Pre-Sentence Investigation Report and Objections

The United States Probation Office in the Northern District of New York prepared a Presentence Investigation Report ("PSR") following Conca's guilty plea. The PSR found a base offense level of 16 pursuant to U.S.S.G. § 2A3.5(a)(1), since Conca was classified as a Tier III Sex Offender under the provisions of 42 U.S.C. § 16911(4). Because it appeared from the records of the Oklahoma County Court that Conca committed the crime of Rape in the First Degree involving a 28-year-old victim while he was in failure to register status in Oklahoma City on August 13, 2008, a 6-point

4

enhancement was applied pursuant to U.S.S.G. § 2A3.5(b)(1)(A). After allowing a 3-point downward adjustment, the base offense level was set at 19.

In calculating Conca's criminal history score, the PSR counted the following convictions: Criminal Possession of Stolen Property, Fourth Degree, Fulton County Court (3 points); False Written Statement, Glen Town Court (1 point); Aggravated Unlicensed Operation, Gloversville City Court (1 point); Burglary, Third Degree, Fulton County Court (2 points); Petit Larceny, Johnstown City Court (1 point); Felony Sexual Assault, 41st District Court, El Paso, Texas (3 points); and Unauthorized Use of Motor Vehicle, Fulton County Court (1 point). To the total of 12 points assigned to the foregoing convictions, 2 points were added because Conca committed the offense giving rise to the judgment subject of this appeal less than two years after release from imprisonment in Texas on April 18, 2008. See U.S.S.G. § 4A1.1(e). According to the Sentencing Table, the total of 14 points thus calculated established a criminal history category of VI. With a base offense level of 19 and a criminal history category of VI, the PSR noted that the Guidelines range for imprisonment was 63 to 78 months. See U.S. SENTENCING GUIDELINES MANUAL Ch. 5, pt. A, sentencing table (2009).

It appears from the PSR that the first offense of conviction described in the preceding paragraph, Criminal Possession of Stolen Property in the Fourth Degree, a felony, involved unlawful possession of a credit card and that Conca was adjudicated a youthful offender in Fulton County Court with respect to that conviction on November 27, 1996. As such, he was sentenced on January 7, 1997, to time served (106 days) and five years probation. Conca's probation was revoked upon his new arrests for Criminal Contempt in the First Degree (felony), Assault in the Third Degree (misdemeanor), and Criminal Mischief in the Fourth Degree (misdemeanor), and he was resentenced to an

5

indeterminate term of imprisonment of 1–3 years on September 10, 1997. Conca was released on parole on June 4, 1998, following completion of a shock incarceration program administered by the New York State Department of Correctional Services. See N.Y. CORRECT. LAW §§ 865–67 (McKinney Supp. 2010) (describing shock incarceration program). He was discharged from parole on May 3, 2000.

Conca objected to the PSR's application of a 6-level enhancement pursuant to U.S.S.G. § 2A3.5(b)(1)(A), which provides for such an enhancement "[i]f, while in a failure to register status, the defendant committed . . . a sex offense against someone other than a minor." The probation office responded by referring to evidence indicating that Conca had committed Rape in the First Degree against a 28-year-old woman in Oklahoma City on August 13, 2008, a time when he was in failure to report status. Conca also objected to the PSR's inclusion of his 1996 conviction for Criminal Possession of Stolen Property in the Fourth Degree in the calculation of his criminal history score. With respect to that objection, Conca contended that, since he was 16 years of age at the time of conviction and treated as a youthful offender by the state of New York, he was not convicted as an adult. Relying on U.S.S.G. § 4A1.2(d)(2)(A) (allowing a juvenile sentence to be included in criminal history score only "if the defendant was released from . . . confinement within five years of his commencement of the instant offense"), Conca asserts that the 1996 offense falls outside the time period for countable sentences.

The probation office responded to this argument by maintaining that youthful offender adjudications are different from juvenile adjudications in family court, that Conca was sentenced to adult probation in adult criminal court, and that he served his sentence upon revocation of probation in an adult correctional facility. Accordingly, the probation office maintained that Conca's youthful offender adjudication constituted an

6

adult conviction within the meaning of the Sentencing Guidelines and therefore was subject to the scoring provisions of U.S.S.G. § 4A1.1(a), based upon the revocation sentence of 1–3 years.

III.     Sentencing Proceedings in the District Court

Both parties submitted sentencing memoranda in the District Court. The government "adopt[ed] the offense level computations, the criminal history score, and the resulting Sentencing Guidelines range set forth in the [PSR] in all respects." Accordingly, the government argued for a sentence within the Guidelines range of 63 to 78 months as "'sufficient, but not greater than necessary,' to take into account all of the relevant sentencing factors" described in 18 U.S.C. § 3553(a).

In his sentencing memorandum, Conca challenged the 6-level increase assessed in the PSR for commission of a sex crime while in failure to register status. He contended that due process requires that the assessment await the outcome of his First Degree Rape trial in Oklahoma. Conca argued that "more reliable facts [were] needed" in regard to the pending rape charge. In making that argument, he pointed out that, although the PSR included a summary of an affidavit supporting a charging document in the Oklahoma case, "[i]t [was] unknown whether a finding of probable cause after hearing or Indictment has been returned in the case," and that "the source of the information reported by the police, or the source of the DNA test, the method used, or the actual results obtained" also were unknown. As to the criminal history calculation, Conca repeated in his sentencing memorandum the same arguments made in his objection to the PSR, viz., that he was not treated as an adult but as a youthful offender, and that his 1996 conviction should add no points to his criminal history score since he was released from prison more than five years

7

prior to the instant offense. In the alternative, Conca sought a departure "to lower the sentence to more appropriately reflect the criminal history of the offender."

At a sentencing hearing held on October 14, 2009, counsel for the government adverted to the two matters that were "in reasonable dispute." One was the criminal history category to be utilized and the second was the 6-level enhancement arising from the Oklahoma First Degree Rape charge. In regard to the latter, the court heard testimony from Detective Dan Sheehan and Kyla England, both of the Oklahoma City Police Department. Counsel for Conca offered no evidence on the 6-level enhancement issue but did argue that the government did not meet its burden of demonstrating that the enhancement was warranted. Specifically, counsel for Conca asserted that Conca would "have his full day in court in Oklahoma" and that, although "hearsay is admissible and there is very limited discovery that occurred with regard to many of the reports that the detective spoke about . . . even in light of those circumstances, we'd ask the Court not to impose the six-level enhancement." In his argument at the sentencing hearing, counsel for Conca also referred to his argument that his client should not be treated for criminal history purposes as an adult offender for the crime as to which he was adjudicated a youthful offender. Counsel stated:

> But I would suggest that 4A1.3 should be exercised here, the Court should exercise its discretion and indicate that Mr. Conca's criminal history significantly overrepresents based on the fact that he was 16 years old at the time of that conviction, the violation was for another crime, which he was punished for, and which other points are added as well, so while it's not double counting, it certainly is counted twice, at least criminal history category 5 is more appropriate under the circumstances.

IV.   The District Court's Analysis and Sentence

Addressing the issue of the 6-point enhancement for the rape charge while Conca was in failure to report status, the court opined as follows:

8

The issue here is, of course, whether or not there was enough information in the presentence investigation report and now with the supplemental testimony of the two witnesses that just testified before this Court to establish that there was a sex offense committed against someone other than a minor at the time when the defendant was in a failure to register status as specified in United States Sentencing Guidelines 2A3.5(b)(1)(A), which references 18 U.S. Code Section 2241 through 2244, 18 U.S. Code Section 2251 and 2421 and 2423. And matching the testimony the Court heard against that guideline and those Penal Law sections, the Court does have enough information to reliably conclude by a preponderance of the evidence that the six-point enhancement is applied and, therefore, is going to apply that.

The District Court further remarked that it "th[ought] that the Government has afforded the defendant with respect to that enhancement every possible due process consideration that it could give."

With respect to Conca's challenge to the criminal history category established in the PSR, the District Court observed that the challenge "had to do with the scoring of an offense as a juvenile matter and whether or not it ought to be scored as an adult and that depends basically on how the defendant was treated." The court stated that its "understanding was [Conca] was adjudicated a youthful offender, but then he violated after that and was revoked and went away and did some time." Accordingly, the court concluded that Conca "was treated as an adult offender and it's gonna (sic) be scored that way."

Addressing Conca's request for a departure or variance from the assigned criminal history category of VI, the court stated:

[A]djudication when he was 16 years old, under a lot of circumstances, might not — might drive the Court to consider a 4A1.3 reduction from a 6 to a 5. But, here, the main focus of consideration of criminal history is two-fold: It's the seriousness of past criminal conduct — the Texas conduct is serious; it's also the likelihood of recidivism. And based upon, unfortunately, Mr. Conca's rough upbringing, the problems he had before he even got out into society and then the way it's been handled, along with his drug addiction and the sexual proclivities, the Court thinks

9

there's a high degree of the possibility of recidivism and that's why I think a 6 is entirely appropriate.

The court went on to recognize that the Sentencing Guidelines were a factor that must be considered along with the other factors listed in 18 U.S.C § 3553(a) and stated:

> With respect to those 3553 factors, the Court thinks there's a strong need for punishment of the defendant for what he's done, there certainly is an overriding need for people in the public, and women especially, for protection from Mr. Conca, there's a need to specifically deter him from continuing in that conduct, there's a need to send a message to anybody else in the world who would consider that type of conduct and the Court is gonna (sic) sentence him. Hopefully he'll get some help and rehabilitation while he's in the Bureau of Prisons.

Recognizing that a "very high" and "unusual" Guidelines range was implicated in this case for the offense of failure to register, the court nevertheless adopted the total offense level of 19 and criminal history category of VI developed in the PSR. Accordingly, the court determined that the Guidelines range for imprisonment was 63 to 78 months and sentenced Conca at the high end of the Guidelines range, 78 months. The District Court explained its sentence as follows: "The Court places your sentence at the high end of the guideline range because of the nature and character of the conduct in your past that's already been outlined in the report, articulated in this courtroom and commented upon at length." Conca timely appealed his sentence. On appeal, Conca contends that the District Court committed procedural error in calculating his criminal history score under the advisory Sentencing Guidelines by including his 1996 youthful offender adjudication, which he refers to as a "juvenile conviction," as an adult conviction.

## ANALYSIS

I.      Standards of Review

We are constrained to review sentences for reasonableness, see United States v. Fernandez, 443 F.3d 19, 26–27 (2d Cir. 2006), and we do so under "a deferential abuse-of-discretion standard," United States v. Cavera, 550 F3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). In reviewing for reasonableness, we examine "both the length of the sentence (substantive reasonableness) and the procedures used to arrive at the sentence (procedural reasonableness)." United States v. Canova, 485 F.3d 674, 679 (2d Cir. 2007). On the substantive side, we have held "that the substantive determination of a District Court will be set aside only in those special cases where the range of permissible decisions does not encompass the District Court's determination." United States v. Johnson, 567 F.3d 40, 51 (2d Cir. 2009).

On the procedural side, we identify procedural error

> when the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation.

Id. Conca contends that the District Court was mistaken in scoring his criminal history for the Guidelines calculation. While factual determinations underlying a district court's Guidelines calculations are reviewed for clear error, a district court's application of the Guidelines is reviewed de novo. United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008). We have held that a "district court's decision to include [a defendant's] youthful offender adjudication in the calculation of his criminal history category presents a straightforward question of law," and therefore must be reviewed de novo. United States v. Matthews, 205 F.3d 544, 545 (2d Cir. 2000). We undertake such a review here.

II.     Youthful Offender Adjudication: The New York Scheme

11

As a sixteen-year-old charged with the felony of Criminal Possession of Stolen Property in the Fourth Degree, Conca was an "eligible youth," i.e., eligible to be adjudicated a youthful offender under New York law. See N.Y. CRIM. PROC. LAW § 720.10(1)–(2) (McKinney 2011). The process leading to this adjudication begins as follows:

> Upon conviction of an eligible youth, the court must order a pre-sentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender.

Id. § 720.20(1).

In making that determination, the state court is obliged to decide whether relieving the defendant of the onus of a criminal conviction and not imposing an indeterminate prison term of more than four years would serve the interest of justice. Id. § 720.20(1)(a). If those criteria are met, the court may find an eligible youth to be a youthful offender. The court must find that an eligible youth is a youthful offender where the conviction is in a local criminal court and the eligible youth has not been convicted of a crime or found to be a youthful offender in the past. Id. § 720.20(1)(b).

If the court does not determine that an eligible youth is a youthful offender, it must "continue the action to judgment pursuant to the ordinary rules governing criminal prosecutions." Id. § 720.20(4). However, "[u]pon determining that an eligible youth is a youthful offender, the court must direct that the conviction be deemed vacated and replaced by a youthful offender finding; and the court must sentence the defendant pursuant to section 60.02 of the penal law." Id. § 720.20(3). As pertinent here, section 60.02 of the New York Penal Law provides that "[i]f the sentence is to be imposed upon a youthful offender finding which has been substituted for a conviction for any felony, the court must impose a sentence authorized to be imposed upon a person convicted of a class

12

E felony." N.Y. PENAL LAW § 60.02(2) (McKinney 2009). A class E felony is one of four felony classifications calling for indeterminate sentencing for a variety of offenses covered by the New York Penal Law. See id. § 70.00(2). The New York Criminal Procedure Law provides that "[a] youthful offender adjudication is comprised of a youthful offender finding and the youthful offender sentence imposed thereon and is completed by imposition and entry of the youthful offender sentence." N.Y. CRIM. PROC. LAW § 720.10(6) (McKinney 2011).

New York law specifically provides that a youthful offender adjudication (1) is not a judgment of conviction; (2) does not disqualify the youthful offender from holding public office or from public employment; and (3) cannot be considered in connection with any license issued by a public authority. Id. § 720.35(1). All official records and papers relating to youthful offender adjudications are designated as "confidential" and may not be made available to any person or agency, with certain exceptions. Id. § 720.35(2). Among the exceptions are "an institution to which such youth has been committed, the division of parole and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law." Id. The New York courts have made clear that "[t]he youthful offender provisions of the Criminal Procedure Law 'emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals.'" People v. Victor J., 724 N.Y.S.2d 162, 163 (N.Y. App. Div. 2001) (quoting People v. Drayton, 350 N.E.2d 377, 379 (N.Y. 1976)).

A different procedure obtains for offenders under 16 years of age, who are generally not held liable for criminal conduct, with certain exceptions. N.Y. PENAL LAW

13

§ 30.00(1)–(2) (McKinney 2009). Such alleged juvenile offenders may have their actions removed to family court pursuant to New York Criminal Procedure Law section 725.10. Upon a finding of delinquent conduct in the family court, juvenile offenders are committed to the jurisdiction of the Division for Youth. N.Y. PENAL LAW § 70.20(4)(a) (McKinney 2009); see N.Y. FAM. CT. ACT § 301.2(3) (McKinney 2008) (defining "[d]etention" as "the temporary care and maintenance of children away from their own homes" and stating that "[d]etention of a person alleged to be or adjudicated as a juvenile delinquent shall be authorized only in a facility certified by the division for youth as a detention facility"). By contrast, those offenders age 16 and older who are adjudicated youthful offenders are committed to the custody of the Department of Correctional Services. N.Y. PENAL LAW § 70.20(1) (McKinney 2009).

III.    Criminal History Scoring for Youthful Offenders: The Sentencing Guidelines

In determining an offender's criminal history category, a district court is required to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Separate provisions are made for computing criminal history categories for those whose previous offenses were committed before they reached the age of 18. Id. § 4A1.2(d) (Offenses Committed Prior to Age 18). The District Court applied the following provision in sentencing Conca: "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." Id. § 4A1.2(d)(1). As to the scoring for others who have committed offenses prior to age 18, the Guidelines provide for the addition of 2 points for each adult or juvenile sentence to confinement for at least 60 days if the offender has been released within five years of the commencement of the instant offense, id. § 4A1.2(d)(2)(A); and the addition of 1 point for each adult or juvenile

14

sentence imposed within five years of the commencement of the instant offense not covered in the former provision, id. § 4A1.2(d)(2)(B). Accordingly, no criminal history points are scored for offenses committed prior to age 18 after the expiration of the five-year time period except if the defendant was convicted "as an adult" and the sentence "received" exceeded one year and one month.

According to the Sentencing Guidelines, expunged convictions are not included in the calculation of a criminal history category, id. § 4A1.2(j), but may be considered under the provisions of § 4A1.3 ("Departure Based On Inadequacy of Criminal History Category (Policy Statement)"). A sentence resulting from a conviction is counted in the criminal history category score where a conviction is set aside or a defendant is pardoned "for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction." Id. § 4A1.2, application note 10 (emphasis supplied). "[L]ook[ing] to the language and design of the state statute, as well as its purpose," we have concluded that "an adjudication under the New York youthful offender statute does not result in an 'expunged' conviction for purposes of the Guidelines." Matthews, 205 F.3d at 546. Rejecting the expungement theory advanced by the defendant in Matthews, we there concluded that the youthful offender adjudication was properly included in computing the criminal history category. Id. at 548–49. Informing our conclusion, in part, was the fact that New York law allows the use of the conviction and youthful offender adjudication for certain purposes. Id. at 547 ("[I]t is clear that the New York legislature knew how to provide for a complete 'expungement,' but it did not do so with respect to the youthful offender statute.").

In United States v. Driskell, 277 F.3d 150 (2d Cir. 2002), we directly confronted the question of when a prior conviction later vacated and replaced by a youthful offender

15

adjudication under New York law may be considered in the criminal history category computation. The prior conviction in that case was one for Attempted Murder in the Second Degree committed by a defendant 17 years of age. A youthful offender adjudication followed the conviction. In holding that the youthful offender adjudication was properly considered, we instructed that "[d]uring its consideration, the district court should examine the nature of this prior proceeding, the sentence received and actually served, and where the defendant was incarcerated." Id. at 151.

To resolve the issue of "convict[ion] as a adult," U.S.S.G. § 4A1.2(d), the Driskell Court "believ[ed] the better course is for a district court to examine the substance of the prior conviction at issue; to 'focus on the nature of the proceedings, the sentence received, and the actual time served.'" Driskell, 277 F.3d at 157 (quoting United States v. Pinion, 4 F.3d 941, 944 (11th Cir. 1993)). It therefore can be said that the determination of whether a youthful offender adjudication can be classified as an adult conviction "is a function of many variables, no single one of which is dispositive." United States v. Jackson, 504 F.3d 250, 253 (2d Cir. 2007).

IV.    Conca's Criminal History Score

In calculating Conca's criminal history score, the District Court properly included Conca's 1996 New York conviction on the felony charge of Criminal Possession of Stolen Property in the Fourth Degree. Although the conviction was ultimately replaced by a youthful offender adjudication, Conca "was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d)(1).

Although Conca originally was sentenced to time served (106 days) and a five-year term of probation, he was resentenced for the same offense to a term of imprisonment of 1–3 years as a consequence of violating his probation. He thus "received" a sentence of

16

imprisonment in excess of one year and one month. A "sentence of imprisonment" under the Guidelines "means a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b)(1). In scoring a criminal history category, "criminal history points are based on the sentence pronounced, not the length of time actually served." Id. § 4A1.2, application note 2. In the case of revocation of probation, the Sentencing Guidelines instruct a district court to "add the original term of imprisonment to any term of imprisonment imposed upon revocation," and "[t]he resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c)." Id. § 4A1.2(k)(1). Conca's sentence to an indeterminate term of 1–3 years upon revocation of his probation therefore fits within the requirement of a "received" sentence exceeding 13 months.

In addressing the issue of whether Conca was "convicted as a adult," the District Court properly examined "the nature of th[e] prior proceeding, the sentence received and actually served, and where the defendant was incarcerated." Driskell, 277 F.3d at 151. The District Court also reviewed the substance of the prior conviction giving rise to the youthful offender adjudication and "focus[ed] on the nature of th[e] proceedings, the sentences received, and the actual time served." Id. at 157 (internal quotation marks omitted). Indeed, the court recognized the "many variables" that informed its inquiry into the issue of adult conviction. Jackson, 504 F.3d at 253.

The District Court noted that Conca "was adjudicated a youthful offender" but "then he violated after that and was revoked and went away and did some time." Information available to the District Court in the PSR indeed revealed that Conca was incarcerated in an adult facility following the revocation of his probation, since he completed a shock incarceration program maintained by the New York State Department of Correctional Services, the agency that administers the New York state prison system

17

and that is responsible for the custody of adult offenders. The shock incarceration program was available to eligible inmates between the ages of 16 and 50 who had not previously been convicted of certain violent felonies and who met other statutory criteria. It provides a six-month period of "rigorous physical activity, intensive regimentation and discipline and rehabilitation theory and programming." N.Y. CORRECT. LAW § 865(2) (McKinney Supp. 2010). Successful completion of the program leads to parole or conditional release. Id. § 867(4). Conca was released on parole on June 4, 1998, having been incarcerated since August of 1997. Conca never was confined in a juvenile facility administered by the New York State Department of Youth.

Conca claims on appeal that "neither the record nor the PSR indicate[s] the nature of the proceeding, the type of sentence imposed, served and where the sentence[] w[as] served." That is just not so, as demonstrated above. Conca also argues that "[t]he District Court failed to examine the substance of the prior conviction and the resulting sentence." But the District Court indicated that it well understood these matters, which were clearly described to the court in the PSR.

Conca concludes his argument on appeal as follows: "Should this Court find that the record did not support that Mr. Conca was not convicted as an adult, then the prior offense in 1996 should not be counted toward the calculation of the criminal history category under section 4A1.2(d)." In agreement with the District Court, we conclude that there is adequate record support for the District Court's finding that Conca was convicted as an adult. In addition, the District Court indicated that it considered all of the factors described in 18 U.S.C. § 3553(a) and decided to impose a sentence at the high end of the Guidelines based on "the nature and character of [Conca's] past;" on the "need to specifically deter him from continuing in that conduct;" and the "overriding need for

18

people in the public, and women especially, for protection from Mr. Conca." The District Court's detailed reasoning is fully adequate to justify the sentence imposed in all respects.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court.