10-2420-cr (L)
United States v. Mancuso

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of June, two thousand eleven.

PRESENT:   CHESTER J. STRAUB,
                      REENA RAGGI,
                      RICHARD C. WESLEY,
                                *Circuit Judges.*

------------------------------------------------------------------------
UNITED STATES,

                                    *Appellee*,

                    v.                                                          Nos. 10-2420-cr (L)
                                                                                            10-2488-cr (CON)

STEVEN MANCUSO, PAUL MANCUSO,
                                    *Defendants-Appellants*,

LESTER MANCUSO,
                                    *Defendant*.[*]

------------------------------------------------------------------------


APPEARING FOR APPELLANTS:          J. SCOTT PORTER, ESQ., Seneca Falls, New York, *for Defendant-Appellant Steven Mancuso.*

                                                            TINA SCHNEIDER, ESQ., Portland, Maine, *for Defendant-Appellant Paul Mancuso.*

------------------------------

[*]  The Clerk of the Court is directed to amend the caption to read as shown above.

APPEARING FOR APPELLEE:  RAJIJT S. DOSANJH, (Craig A. Benedict, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York; Ignacia Moreno, Assistant Attorney General; Todd H. Gleason, Trial Attorney, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C.

Appeals from judgments of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of conviction entered as to defendant Steven Mancuso on June 14, 2010; and as to Paul Mancuso on June 14, 2010, and January 10, 2011, are AFFIRMED IN PART and VACATED IN PART, and the cases are REMANDED for resentencing consistent with this order.

Steven and Paul Mancuso stand convicted by a jury on a common count of conspiracy to defraud the United States, see 18 U.S.C. § 371; to commit mail fraud, see id. § 1341; to violate the Clean Air Act ("CAA"), see 42 U.S.C. §§ 7412, 7413(c); and to violate the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), see id. § 9603.  Paul Mancuso was further convicted of six substantive CAA and CERCLA counts.  See 42 U.S.C. §§ 7413(c), 9603(a)-(b).  Steven Mancuso, who was sentenced to 44 months in prison, challenges (1) the district court's denial of his suppression motion; (2) the government's (i) non-disclosure of handwriting exemplars and (ii) summation; (3) the sufficiency of the evidence; (4) the lack of a multiple-conspiracy charge; (5) the legal validity

2

of the CAA object; and (6) the procedural and substantive reasonableness of his sentence. Paul Mancuso, presently serving a 78-month prison term, challenges (1) the suppression denial, (2) the prosecutor's summation, and (3) the procedural reasonableness of his sentence. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

1.      Suppression Motion

Defendants assert that documents seized pursuant to three searches of their offices should have been suppressed because the warrants were based on materially false or misleading information. See United States v. Coreas, 419 F.3d 151, 155 (2d Cir. 2005) (stating that defendant challenging warrant application must demonstrate (1) "'deliberate falsehood' or 'reckless disregard for'" truth and (2) that untainted information does not support probable cause (quoting Franks v. Delaware, 438 U.S. 154, 171-72 (1978))). We review for clear error a district court's determination of whether officers acted deliberately or recklessly, and we review de novo the sufficiency of untainted information to establish probable cause. See United States v. Awadallah, 349 F.3d 42, 65 (2d Cir. 2003).

In identifying falsehoods requiring suppression, defendants contend that Agent Fraccola misstated that Paul's prior federal conviction banned him from the asbestos industry and that the investigation into Paul started in October 2005 when it actually began earlier. The district court did not clearly err in determining that any misstatements were not deliberately false or reckless because the warrant affidavits discuss a new investigation that began when David Comstock, Paul's employee, was discovered dumping asbestos on

3

October 19, 2005. Without mentioning a ban, the affidavits state that Comstock told Fraccola that "due to" Paul's federal conviction "and not being able to obtain an asbestos license," Paul created fraudulent companies. Nov. 10, 2005 Affs. at 7-8.[1] Moreover, Fraccola testified that, when he filed the affidavits, he was unaware of Paul's state ban from the asbestos industry, but knew that Paul lacked the required asbestos license.

In any event, the remaining unchallenged information establishes a "fair probability" that "evidence of a crime" would be found at the offices. Illinois v. Gates, 462 U.S. 213, 238 (1983). In urging otherwise, the Mancusos argue that the applications fail to explain the illegality of Paul's activities absent a federal ban. To the contrary, the affidavits describe informants illegally removing asbestos at Paul's direction, Paul's operation of sham subcontractors, and federal agents discovering two contaminated sites. None of the alleged omissions undermines this conclusion because they are immaterial to a probable cause determination.[2]

2. Government Misconduct

Steven asserts that Brady and Rule 16 failures to disclose defendants' handwriting exemplars required a new trial. See Fed. R. Crim. P. 33. Both defendants contend that the

_____

[1] Although the later-filed affidavit supporting the warrant to search Steven's office does not mention the lack of an asbestos license, it was based on information obtained during the searches authorized by the earlier warrants.

[2] Defendants' contention that they were improperly limited in cross-examining Fraccola is unavailing. We identify no abuse of discretion in the district court's determination that the requested testimony related to a collateral matter. See United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010), cert denied 131 S. Ct. 956 (2011).

4

prosecutor's summation also requires a new trial.  Neither argument has merit.

   a.    *Brady* / Rule 16

The district court did not err, let alone abuse its discretion, see United States v. Farhane, 634 F.3d 127, 168 (2d Cir. 2011), in denying Steven's conclusory Brady claim because the exemplars were not materially favorable to his defense, see Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006).  The government never submitted the exemplars for analysis, relying instead on lay witnesses' familiarity with defendants' handwriting.  Indeed, Steven contends only that disclosure might have alerted him to the potential for handwriting-related testimony, not that the exemplars provided exculpatory or impeachment evidence.

We need not here decide whether the exemplars were at least discoverable under Fed. R. Crim. P. 16(a)(1)(E), because Steven cannot demonstrate prejudice from non-disclosure. See United States v. Thomas, 239 F.3d 163, 167 (2d Cir. 2001).  Steven's purported surprise at having his handwriting identified on the backdated partnership agreement is belied by the government's pre-trial allegation that he drafted the fraudulent document.  Steven's asserted inability to consult a handwriting expert or to question witnesses regarding the exemplars resulted from his own strategic choices, not government conduct.  After Gregory Starczewski identified Steven's handwriting, Steven chose only to attack Starczewski's credibility rather than to request the exemplars, create his own handwriting samples for expert analysis, or seek an adjournment.  Although Ronald Mancuso testified before Starczewski during the government's case, Steven was free to re-call Ronald, which he did not do.

Finally, assuming arguendo that the district court erred in sua sponte adding an

5

"uncalled witness" instruction after Steven's summation commented on the government's failure to call a handwriting expert, see Fed. R. Crim. P. 30(b) (requiring judge to "inform" parties "before closing arguments" of its rulings on "requested instructions"); United States v. James, 239 F.3d 120, 124 (2d Cir. 2000) (stating that district court "may violate Rule 30 . . . by giving instructions that he did not inform counsel he would give"), we identify no prejudice, see United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997). The charge did not shift the burden of proof – which was explained fully to the jury – or undermine Steven's argument that his handwriting was not identified by an expert. Nor did the charge damage Steven's credibility because it did not mention handwriting experts.

b.      Prosecutor's Summation

Defendants submit that a new trial is required by improper remarks made during the prosecutor's summation. Such an argument generally requires a showing of "substantial prejudice," see, e.g., United States v. Whitten, 610 F.3d 168, 202 (2d Cir. 2010); if no objection is made during trial, the defendant must demonstrate "flagrant abuse," see United States v. Zichettello, 208 F.3d 72, 103 (2d Cir. 2000).

The Mancusos assert that the prosecutor improperly vouched for witnesses by linking the government's credibility to that of the witnesses, see United States v. Rivera, 971 F.2d 876, 884 (2d Cir. 1992), or implying the existence of corroborating extraneous proof, see United States v. Bagaric, 706 F.2d 42, 61 (2d Cir. 1983), abrogated on other grounds by National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994). The remark that "[e]verything those witnesses told us, they told the United States long before those immunity

6

letters were signed," Trial Tr. at 853, manifests no prejudicial vouching when read in context. The prosecutor's preceding statement that the witnesses received immunity "the day of or the day before the testimony," id., indicates that the challenged comment conveyed that the witnesses provided information to the government before receiving immunity, a fact in evidence.

Even if the prosecutor's following comment that the immunized witnesses "will be" (as opposed to "could be") prosecuted for any falsehoods, id. at 854, approached the boundary of impropriety, it did not cross it in light of the defendants' vigorous credibility attacks and testimony regarding potential perjury prosecutions. Likewise, the prosecutor's rebuttal statement that "I'm not going to immunize" Frank Meola, id. at 952, to which neither defendant objected, did not constitute flagrant abuse when Paul's summation questioned the government's failure to immunize Meola, see United States v. Young, 470 U.S. 1, 11-13 (1985) (describing invited response doctrine).

Paul also complains that the prosecutor commented on his failure to testify by stating that the defense was "empowered to call witnesses . . . if they felt someone was going to aid them . . . [t]hey introduced documents, Steven testified." Trial Tr. at 951. This misreads the record. Paul's summation repeatedly commented on the government's failure to call particular witnesses. Thus, the challenged remark, made after the prosecutor stated that the jury had heard "about why didn't we call this witness and why didn't we call that witness," id., is fairly understood to indicate that Paul could have called the third-party witnesses he identified, see United States v. Whitten, 610 F.3d at 199 (analyzing whether comments could

7

"naturally and necessarily" be interpreted as referring to "defendant's failure to testify").

Paul similarly misconstrues the record in contending, for the first time on appeal, that the prosecutor impermissibly referenced criminal propensity by stating "Paul's entire history is one of noncompliance . . . from virtually the moment you started hearing evidence about this case." Trial Tr. at 953. Paul's summation urged the jury to infer that Ronald Mancuso was responsible for Kodiak's illegal asbestos removal, which "wouldn't have happened" if Paul was the general contractor, id. at 923, and emphasized that Paul lacked the "state of mind," id. at 936, 940, to commit crimes after his previous convictions. In this context, the reference to Paul's history of non-compliance is certainly not flagrant abuse but a permissible exhortation for the jury to infer Paul's culpable knowledge and intent from the totality of the evidence. See generally Fed. R. Evid. 404(b).

In any event, none of the identified comments, including the government's admitted reference to extraneous evidence regarding an air monitoring company's pending prosecution, warrants reversal. Considering the mild nature of these statements and the district court's often contemporaneous curative instructions, see United States v. Elias, 285 F.3d 183, 192 (2d Cir. 2002) (noting that curative instruction in court's final charge sufficient where prosecutor's misconduct not severe), defendants cannot show that they were denied a fair trial.

3.    Sufficiency Challenge

In mounting a sufficiency challenge to his conviction, Steven bears a heavy burden because, although our standard of review is de novo, we view the evidence in the light most

8

favorable to the government, drawing all reasonable inferences in its favor. See United States v. Heras, 609 F.3d 101, 105 (2d Cir. 2010). We will reverse a general guilty verdict on a multi-object conspiracy only if no reasonable jury could find guilt beyond a reasonable doubt based on any of the charged objects. See Griffin v. United States, 502 U.S. 46, 56-60 (1991); United States v. Rutkoske, 506 F.3d 170, 176 (2d Cir. 2007). That is not this case.

The evidence was more than sufficient to support a guilty verdict on the defraud clause object. See United States v. Shellef, 507 F.3d 82, 104 (2d Cir. 2007) (identifying elements of § 371 conspiracy: (1) defendant entered agreement (2) to obstruct government's "lawful function" (3) "by deceitful or dishonest means," and (4) completion of overt act). Several witnesses testified that, after Paul's prior conviction for CAA violations, Steven prepared a power of attorney for Paul to use in operating AEG, the asbestos business of Ray Testa. Witnesses explained that Paul impersonated Testa, signed Testa's name on regulatory and customer documents without disclosing the power of attorney, and falsely reported Testa's presence at work sites. Although Paul was not then banned from the asbestos industry, evidence showed that AEG's purported subcontractor repeatedly violated the CAA in removing asbestos. A reasonable jury could thus have concluded that the power of attorney impaired government functions by hiding Paul's involvement in illegal asbestos practices from regulators scrutinizing him after his federal conviction. See United States v. Ballistrea, 101 F.3d 827, 833 (2d Cir. 1996) (concluding that active concealment of information from federal regulators supported defraud clause conviction). Moreover, assuming, as we must, that the jury discredited Steven's testimony that he believed Paul's

9

use of the power of attorney was lawful, the jury could reasonably have inferred from the totality of these circumstances Steven's knowing agreement to help Paul evade regulatory oversight.

Indeed, Steven's culpable mens rea was further supported by evidence that he formed Kodiak in January 2005, when he knew Paul was banned from the asbestos industry. Several witnesses testified that Paul used Kodiak and its sham subcontractors to hide his illegal asbestos activities. Again, we must assume that the jury discredited Steven's testimony that he formed Kodiak solely for Ronald Mancuso, the listed owner, an assertion contradicted by evidence that Paul openly operated Kodiak out of Steven's law office, discussed asbestos business in Steven's presence, including how to "stay under the radar," Trial Tr. at 770, and performed legal work for Kodiak, see United States v. Ballistrea, 101 F.3d at 833 (concluding that defraud clause conspiracy supported by evidence that defendant created new company to conceal activities from federal regulators).

Accordingly, we need not discuss other conspiracy objects to conclude that Steven's sufficiency challenge lacks merit.

4.    Multiple-Conspiracy Instruction

Steven Mancuso submits that a multiple-conspiracy charge was required because the trial proof established an independent insurance fraud conspiracy. Because Steven failed to raise this issue below, we review for plain error. See, e.g., United States v. Desimone, 119 F.3d 217, 225 (2d Cir. 1997).

Steven cannot satisfy the plain error requirement of an effect on his substantial rights

10

given our determination that the evidence supports his conviction on the charged conspiracy. See United States v. Payne, 591 F.3d 46, 62 (2d Cir. 2010) (stating that "jury should convict" "[e]ven if multiple conspiracies are found" if evidence establishes defendant's participation in one of indictment's alleged conspiracies), cert denied 131 S. Ct. 74 (2010). We likewise reject any contention that a variance between the charged conspiracy and that proved at trial requires reversal. See id. at 62 (stating that existence of single charged conspiracy or multiple conspiracies is fact question for jury); United States v. Desimone, 119 F.3d at 225-26 (denying new trial based on purported variance between indictment's single conspiracy and multiple conspiracies proved at trial because evidence supported conviction).

5.    Legal Validity of CAA Object

Steven also contends for the first time on appeal that the CAA conspiracy object contained a legally invalid theory requiring reversal because "none of" the projects "involving" him "are subject to the CAA." Steven Mancuso's Br. at 80; see Griffin v. United States, 502 U.S. at 59; United States v. Desnoyers, 637 F.3d 105, 109-10 (2d Cir. 2011) (stating that general guilty verdict "must be reversed" if any theory "legally insufficient"). We again review for plain error, see United States v. Irving, 554 F.3d 64, 78 (2d Cir. 2009), and identify none. This "purported legal challenge is simply a restatement of" Steven's factual sufficiency challenge, which we have already rejected by reference to the defraud clause object. United States v. Desnoyers, 637 F.3d at 111. In any event, Steven's involvement in CAA-related projects was a fact question for the jury, which was "correctly instructed on the conditions under which the CAA asbestos regulations apply." Id. at 111-12.

11

6.      Sentence Challenge

We review the challenged sentences for reasonableness, a standard akin to that for abuse of discretion. See United States v. Cavera, 550 F.3d 180, 187-89 (2d Cir. 2008) (en banc); United States v. Canova, 485 F.3d 674, 679 (2d Cir. 2007) (discussing procedural and substantive reasonableness).

a.      Grouping Analysis

Steven Mancuso submits that the district court procedurally erred in applying the multi-object conspiracy Guideline. See U.S.S.G. § 1B1.2(d) & cmt. n.4; see also United States v. Cavera, 550 F.3d at 189-90 (stating that miscalculation of Guidelines range may constitute procedural error rendering sentence unreasonable). Steven preserved his grouping challenge by objecting to the PSR's § 1B1.2(d) analysis and requesting district court findings despite not challenging the district court's grouping under § 3D1.2(c). Accordingly, we review the district court's Guideline application de novo and its factual determinations for clear error. See United States v. Conca, 635 F.3d 55, 62 (2d Cir. 2011).

In sentencing a defendant convicted by a general verdict of a multi-object conspiracy as if he "had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit," U.S.S.G. § 1B1.2(d), a district court must determine "if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit" the particular objects, id. cmt. n.4; see United States v. Robles, 562 F.3d 451, 455-56 (2d Cir. 2009); see also United States v. Malpeso, 115 F.3d 155, 167-68 (2d Cir. 1997) (holding that § 1B1.2(d) determination must be "beyond a reasonable doubt"). Steven complains that the

district court improperly declined to determine whether it would have convicted him of conspiring to violate the CAA and CERCLA by grouping the environmental and mail fraud objects pursuant to § 3D1.2(c).

The sentencing record here does not reflect any specific district court finding that it would have found Steven guilty of the environmental (or other) counts. Rather, it appears that the district court may have declined to engage in the reasonable doubt inquiry because it grouped the environmental objects under § 3D1.2(c) as "conduct . . . treated as a specific offense characteristic" of the mail fraud object. U.S.S.G. § 3D1.2(c); see also id. § 2B1.1(13). The § 1B1.2(d) analysis, however, may be avoided only if objects "would be grouped [] under § 3D1.2(d)," not § 3D1.2(c). U.S.S.G. § 1B1.2(d) cmt. n.4; see generally id. § 3D1.2(d) (grouping if offense level "determined largely" by aggregate harm or if offense guideline written to cover "ongoing or continuous" behavior). Although, as the government notes, the opinion denying Steven's sufficiency challenge suggests that the district court might find Steven guilty of the CAA and CERCLA objects, the sufficiency standard asks only whether any trier of fact could have found guilt, not whether the district court would reach the same conclusion had it been the trier of fact. Accordingly, in an abundance of caution, we remand to the district court for further findings consistent with this order.

b.    Repetitive Discharge Enhancement

We apply plain error review to Steven's challenge to the enhancement for repetitive discharge of hazardous substances, see U.S.S.G. § 2Q1.2(b)(1)(A), an issue not raised below

13

despite notice, see United States v. Espinoza, 514 F.3d 209, 211-12 (2d Cir. 2008). The challenge fails because Steven's CAA and CERCLA offense conduct involved more than recordkeeping; the evidence indicated his knowing participation in a scheme for repeated illegal dumping and dry removal of asbestos. See U.S.S.G. § 2Q1.2(b)(5); United States v. Rubenstein, 403 F.3d 93, 99-100 (2d Cir. 2005); cf. United States v. Liebman, 40 F.3d 544, 547, 551-52 (2d Cir. 1994) (remanding for determination of whether defendant guilty only of reporting offense concealed substantive violations).

c.    Permit Enhancement

Both defendants fault the district court for applying a four-level enhancement for permitless disposal of a hazardous substance based on a Clean Water Act permit violation. See U.S.S.G. § 2Q1.2(b)(4). Although neither defendant objected to the enhancement below, we are here obliged to identify plain error.

Our precedent prohibits application of § 2Q1.2(b)(4) when the environmental offense at issue "did not 'involve' a permit violation," even if the conduct contravened a different statute's permit requirements. United States v. Rubenstein, 403 F.3d at 100-01 (vacating enhancement based on state permit violation when defendant convicted of CAA offense because CAA does not require permit). Thus, the district court here plainly erred by applying the enhancement based solely on a Clean Water Act permit violation because the relevant CAA and CERCLA offenses did not involve permits. In urging otherwise, the government notes that we have not yet determined whether § 2Q1.2(b)(4) applies when the permit violation is part of a broader conspiracy to commit mail fraud or defraud the government.

14

That may be true, but the district court here did not apply § 2Q1.2(b)(4) in this manner. After grouping the objects under § 3D1.2(c), the judge scored only the environmental counts.

This error affected both defendants' substantial rights by significantly overstating the applicable Guidelines ranges. See United States v. Folkes, 622 F.3d 152, 158 (2d Cir. 2010); United States v. Gamez, 577 F.3d 394, 401 (2d Cir. 2009). Specifically, at Steven's sentencing, the district judge applied a Guidelines range of 41-to-51 months based on an offense level of 22 and a Criminal History Category I. Without the permit enhancement, the offense level reduces to 18 with a corresponding range of 27-to-33 months. A similar result obtains for Paul, who had an offense level of 26, a Criminal History Category II, and a Guidelines range of 70-to-87 months. Once his offense level is reduced to 22, the correct Guidelines range is 46-to-57 months. Because the district court's determination of an appropriate sentence appears to have been influenced by the inflated Guideline ranges, we exercise our discretion to correct the error as one that "seriously affected the fairness of judicial proceedings." See United States v. Folkes, 622 F.3d at 158 (internal quotation marks, ellipsis, and brackets omitted).

In remanding for resentencing consistent with this order, we do not limit the district court's discretion to identify factors not adequately considered by the Guidelines as grounds for departure, see U.S.S.G. § 5K2.0(a); United States v. Fairclough, 439 F.3d 76, 81 (2d Cir. 2006), or to impose a non-Guidelines sentence, see United States v. Booker, 543 U.S. 220, 243-45 (2005); United States v. Skys, 637 F.3d 146, 152 (2d Cir. 2011).

d.    Special Skills Enhancement

15

Steven charges further procedural error in the application of a special skills enhancement, arguing that his legal skills did not facilitate conveying boilerplate contract terms to victims. See U.S.S.G. § 3B1.3 & cmt. n.4. We review a district court's "determination of whether a defendant utilized . . . special skill in a manner that significantly facilitated the commission or concealment of" an offense for clear error, United States v. Thorn, 446 F.3d 378, 388 (2d Cir. 2006), and identify none here. While the district court cited the contracts as one example supporting the enhancement, the trial evidence demonstrated that Steven also used his legal skills to create the power of attorney, draft the backdated partnership agreement, and form Kodiak. This record supports a § 3B1.3 enhancement. See United States v. Reich, 479 F.3d 179, 192 (2d Cir. 2007) (rejecting argument that law skills not used to fax forged order because defendant created order).

e.      Obstruction Enhancement

Steven challenges the perjury enhancement for insufficient factual findings. See U.S.S.G. § 3C1.1. Because Steven objected below, the district court was required to "make independent findings necessary to establish" willful obstruction. United States v. Elfgeeh, 515 F.3d 100, 138 (2d Cir. 2008) (internal quotation marks omitted); United States v. Ben-Shimon, 249 F.3d 98, 104 (2d Cir. 2001) (requiring finding that defendant "(1) willfully (2) and materially (3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter").

The district court characterized portions of Steven's testimony regarding the power of attorney and his involvement in Paul's businesses as "perjurious." Steven Mancuso

16

Sentencing Tr. at 11. Even if, as the government contends, this implied a finding that Steven intentionally gave false testimony on a material matter, our precedent requires an explicit finding of <u>willful</u> obstruction. <u>See</u> <u>United States v. Ben-Shimon</u>, 249 F.3d at 104. Accordingly, we remand for further fact finding consistent with this order.

f.      <u>Minor Role Adjustment</u>

Steven complains of his failure to receive a minor role adjustment. <u>See</u> U.S.S.G. § 3B1.2(b). Although we have not consistently described the standard of review for role adjustments, <u>see</u> <u>United States v. Labbe</u>, 588 F.3d 139, 145 n.2 (2d Cir. 2009), we identify no error here, clear or otherwise. Steven could not prove his minor role by a preponderance of the evidence, <u>see</u> <u>United States v. Yu</u>, 285 F.3d 192, 200 (2d Cir. 2002), because the evidence showed that he repeatedly did legal work designed to hide Paul's illegal asbestos activities. Steven's assertion that he was unaware of his brother's illegal activities was contradicted by other testimony and rejected by the jury in its guilty verdict.

g.      <u>Other Challenges</u>

Steven complains of procedural unreasonableness in the district court's (1) alleged failure to consider his family circumstances, (2) reference to his drug addictions, and (3) statement of reasons. None of these challenges has merit.

Nothing in the record suggests that the district court failed adequately to consider Steven's family situation. <u>See</u> <u>United States v. Fernandez</u>, 443 F.3d 19, 30 (2d Cir. 2006) (stating that "we presume, in the absence of record evidence suggesting otherwise," that a sentencing judge faithfully discharged its duty to consider § 3553(a) factors). To the

17

contrary, the experienced district judge stated that he had "reviewed and . . . considered the pertinent information, the Presentence Investigation Report . . . [and] submissions by counsel," and considered the § 3553(a) factors. Steven Mancuso Sentencing Tr. at 9. Indeed, the district court's discussion of family ties in rejecting a downward departure showed its consideration of this issue without requiring it to explain more fully its § 3553(a) analysis. See United States v. Pereira, 465 F.3d 515, 523 (2d Cir. 2006).

The district court's drug addictions reference, when read in context, explained that Steven's behavior undermined his request for mitigating consideration. Steven's claim that the district court increased his sentence because of the addictions thus fails for lack of record support.[3]

We identify no plain error in the district court's statement of reasons, to which Steven did not object below. See 18 U.S.C. § 3553(c); United States v. Villafuerte, 502 F.3d 204, 211-12 (2d Cir. 2007). Because the district court selected a sentence at the low end of an applicable Guidelines range of less than 24 months, it fulfilled its § 3553(c) obligations by stating "the basis for the adjusted offense level and criminal history category." United States v. James, 280 F.3d 206, 208 (2d Cir. 2002); see also United States v. Villafuerte, 502 F.3d at 211-12 (noting that sentences at bottom of Guidelines range "often will not require lengthy explanation"). We will not overturn our holding in James, which relied in part on the

_____

[3] We likewise reject Steven's claim that the district court failed to resolve factual disputes regarding his family commitments. The district court resolved any factual dispute with reference to Steven's undisputed drug addictions.

18

then-mandatory nature of the Guidelines, on plain error review.  See United States v. James, 280 F.3d at 208; see generally United States v. Booker, 543 U.S. 220.

Finally, because we remand for resentencing, we need not address Steven's contention that his sentence was substantively unreasonable.

7.    Conclusion

We have considered Steven and Paul Mancuso's remaining arguments on appeal and conclude that they lack merit.  Accordingly, the judgments of conviction are AFFIRMED IN PART and VACATED IN PART, and the cases are REMANDED for resentencing consistent with this order.

FOR THE COURT
Catherine O'Hagan Wolfe, Clerk