08-4417-cr (L)
U.S. v. Malki

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Heard: April 30, 2010                    Decided: June 29, 2010

Docket No. 08-4417-cr (L), -4436-cr (Con)

- - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,
     Appellee,

          v.

NOUREDDINE MALKI,
     Defendant-Appellant.
- - - - - - - - - - - - - - - - -

Before:  NEWMAN, RAGGI, and HALL, <u>Circuit Judges</u>.

Appeal from the May 23, 2008, judgment of the United States District Court for the Eastern District of New York (Edward Korman, District Judge), sentencing the Defendant-Appellant to an aggregate sentence of 121 months after his pleas of guilty to offenses including violations of 18 U.S.C. § 793(e), punishing improper use of national defense information.  Malki challenges the selection of section 2M3.2 as the applicable sentencing guideline, rather than section 2M3.3.

Remanded for resentencing.

> Alison M. Weir, New Haven, Conn. (James I. Glasser, Wiggin and Dana, LLP, New Haven, Conn., on the brief), for Defendant-Appellant.

Jeffrey H. Knox, Asst. U.S. Atty., Brooklyn, N.Y. (Benton J. Campbell, U.S. Atty., David C. James, John David Buretta, Asst. U.S. Attys., Brooklyn, N.Y., on the brief), for Appellee.

JON O. NEWMAN, Circuit Judge.

This appeal primarily concerns the rarely litigated issue of the appropriate sentencing guideline, under the United States Sentencing Guidelines ("the Guidelines") for violations of 18 U.S.C. § 793(e), which punishes, among other things, unauthorized possession and willful retention of various documents relating to national defense. The issue arises on an appeal by Noureddine Malki from the May 23, 2008, judgment of conviction of the United States District Court for the Eastern District of New York (Edward R. Korman, District Judge) after pleading guilty to seven offenses charged in two separate indictments. The District Court imposed an aggregate sentence of 121 months. On appeal, Malki principally challenges the determination of the applicable guideline for the section 793(e) offenses, contending that section 2M3.3 of the Guidelines, rather than section 2M3.2, should have been used for the initial calculation. We agree, and therefore remand for resentencing.

## Background

The offenses. The Defendant arrived illegally in the United States in 1978 and obtained political asylum in 1989, using a false identity and a fabricated story of persecution. He was granted

-2-

permanent resident status in 1993 and in 2000 was naturalized as a United States citizen under the name "Almaliki Nour," having provided false information of his name, birth date, and national origin. In 2003 Malki was hired as an interpreter for the contracting company, Titan, and was assigned to provide translation services for military intelligence personnel in the 82nd Airborne Division of the United States Army in Iraq. He was stationed at Al Taqqadam Air Base ("TQ"), which is located in Al Anbar province in an area west of Baghdad in the "Sunni Triangle." In obtaining security clearance for his position, Malki again provided false information about his background. He gained access to classified information in his position at Titan but was not permitted to possess classified information and was advised that he could only view such information after receiving specific authorization on a "need to know" basis. On a second tour in Iraq in 2004, Malki again provided translation services to United States army intelligence personnel.

At the end of his second tour, Malki was questioned by agents for the FBI and the Department of Defense to determine whether he should continue to have access to classified material. He reiterated the false information he had previously provided on other occasions regarding his fictitious name, national origin, and family background. At this time, Malki also gave consent to search his apartment in Brooklyn, New York, where the FBI recovered classified material from

the 82nd Airborne Division at TQ, three documents and a fourth document contained on a CD-ROM.

Upon returning to New York, he was interviewed by FBI agents and admitted that he had assumed a false identity in order to obtain political asylum and later United States citizenship and that he was in fact a Moroccan national named Noureddine Malki. Malki was arrested in October 2005.

The charges. Malki pled guilty to three offenses charged in an initial indictment: two counts of making material false representations to the executive branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2), and one count of falsely procuring American citizenship, in violation of 18 U.S.C. § 1425(a). He also pled guilty to four counts of a second indictment charging that "having unauthorized possession of a document relating to the national defense," he "knowingly and willfully retained" the document and "failed to deliver it to the officer and employee of the United States entitled to receive it," in violation of 18 U.S.C. § 793(e). Each of these four counts concerns a different document. These offenses were based on the classified documents recovered at Malki's apartment.

Sentencing. Malki's amended presentence report ("PSR") combined sentencing recommendations for the offenses in both indictments. For the false statement counts in the first indictment, Malki's base

-4-

offense level was 6, and the PSR recommended a 2-level enhancement for obstruction of justice. For the third count of falsely procuring United States citizenship, Malki's base offense level was 8 with a 4-level enhancement for fraudulently obtaining an American passport and a 2-level enhancement for obstruction of justice. Malki's adjusted offense level for the three offenses charged in the first indictment was 14, pursuant to applicable grouping rules, see U.S.S.G. §§ 3D1.1-.5

With respect to the four violations of section 793(e), the PSR used section 2M3.2 of the Guidelines, entitled "Gathering National Defense Information." Section 2M3.2 provides a base offense level of 30 for non-top secret information, such as the documents in Malki's possession. The PSR recommended a 2-level enhancement for abuse of trust, see id. § 3B1.3, and another 2-level enhancement for obstruction of justice, see id. § 3C1.1, and denial of a reduction for acceptance of responsibility, see id. § 3E1.1, resulting in an adjusted offense level of 34. The four counts for violating section 793(e), which were grouped with each other, could not be grouped with the three counts of the first indictment, but because level 14, applicable to the first indictment counts, was more than 9 levels less serious than level 34, applicable to the second indictment counts, the total adjusted offense level remained 34 for all seven counts. See U.S.S.G. § 3D1.4(c).

-5-

Malki objected to the Probation Department's use of section 2M3.2 to calculate his sentencing range for the section 793(e) offenses, contending that this guideline applies only to the offense of "gathering national defense information," U.S.S.G. § 2M3.2 (emphasis added). In an addendum to the PSR, the Probation Department responded that use of section 2M3.2 was proper since there was evidence that Malki had "actively gathered" the classified information even though he pleaded only to unauthorized retention of such information. At sentencing, the District Court concluded that the PSR's recommended adjusted offense level calculated pursuant to section 2M3.2 was appropriate and accepted all aspects of the PSR except the recommended 2-level enhancement for abuse of trust. With a total adjusted offense level of 32, Malki's Guidelines sentencing range was 121 to 151 months. Endeavoring to impose an aggregate sentence at the bottom of the applicable Guidelines sentencing range, Judge Korman imposed concurrent sentences of 12 months for the counts in the first indictment and concurrent sentences of 109 months for the counts in the second indictment, with the sentences for the second indictment counts to run consecutively to those for the first indictment.[1] The

---

[1]In the oral pronouncement of sentence, Judge Korman imposed the concurrent sentences of 12 months only on Counts 1 and 2 of the first indictment. The written judgment states that the 12-month concurrent sentences were imposed on all three counts of the first indictment. This inconsistency does not affect the aggregate sentence.

aggregate sentence was thus 121 months.

Judge Korman initially explained the sentence as follows:

> Well, let me start off with I think the guideline range as applied to this defendant is a reasonable one that reflects almost all of the factors set out in [section] 3553(a), both in terms of the seriousness of the offense and the need to deter others which are of particular importance.

He then elaborated:

> Let me tell you the reason for my hesitancy here. I intend to impose a sentence within what I believe is the guideline range and which, I believe, is a reasonable one. And anything less would be inappropriate given the finding that he was gathering this material.

> What troubles me here is there is a certain element of bizarreness about this case. I'm not 100 percent sure whether we're dealing with a spy or someone who has other problems. And so it causes me to have some hesitation about the sentence. And it really is for that reason that I am going to give a sentence at the bottom end of the guideline range. It could be that he's something more than someone who was acting bizarrely or has other problems but I am just not — I don't have that degree of certainty. If I did, I would go above the guideline range.

## Discussion

Malki makes four arguments on appeal. First, he contends that the District Court erred in using section 2M3.2 in calculating his sentencing range for the 18 U.S.C. § 793(e) counts. Second, he argues that the Court erred in imposing a two-level enhancement for obstruction of justice. Third, he argues that he should not have been denied credit for acceptance of responsibility. Finally, he contends that his sentence is unreasonable because the District Court did not

-7-

sufficiently consider sentences imposed on similarly situated defendants and the need to eliminate unwarranted sentencing disparities pursuant to 18 U.S.C. § 3553(a)(6).

A. Guideline Selection

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [T]he Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). To select the correct guideline for the offense, the court must first consult the statutory index in the Guidelines Manual. See U.S.S.G. § 1B1.2(a). For violations of 18 U.S.C. § 793(e), the index specifies two guidelines: section 2M3.3 and section 2M3.2. "When more than one guideline is listed for a count of conviction under a given statutory section, the court is to apply the guideline that is most appropriate for the defendant's offense conduct in that count." United States v. Irving, 554 F.3d 64, 73 (2d Cir. 2009).

Pairing the appropriate guideline with the statutory offense is rendered somewhat uncertain by the fact that neither of the cross-referenced guidelines fits neatly with the several forms of offense conduct covered by section 793(e). That section punishes a person who commits either of two types of offense conduct: willfully "transmits" classified information to any person not entitled to receive it, or willfully "retains" such information and fails to deliver it to a

person entitled to receive it.[2]

Section 2M3.2 reads:

Gathering National Defense Information

(a) Base Offense Level:

    (1) 35, if top secret information was gathered; or

    (2) 30, otherwise.[3]

_____

[2]Subsection 793(e) provides:

    Whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it;

. . . .

   . . .

    Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(e).

[3]Writing only for myself, I point out that the Commission's precise increment of 5 levels where the classified documents are "top secret" rather than merely "secret" is another example of the Sentencing Commission's ill-advised insistence on adding precise amounts of extra punishment for every identifiable aspect of offense conduct. Cf. U.S.S.G. § 2B1.1(b)(1) (establishing 16 levels of

U.S.S.G. § 2M3.2.

　　Section 2M3.3 reads:

　　　　<u>Transmitting National Defense Information: Disclosure</u>
<u>of Classified Cryptographic Information; Unauthorized</u>
<u>Disclosure to a Foreign Government or a Communist</u>
<u>Organization of Classified Information by Government</u>
<u>Employee; Unauthorized Receipt of Classified Information</u>

　　(a) Base Offense Level:

---

additions to the base offense level for monetary crimes for each of 16 categories of monetary loss).  Of course, an offense involving "top secret" documents might be more injurious to the national interest than an offense involving only "secret" documents, but the penological issues are whether the added seriousness of harm should always result in added punishment, and, in those instances where added punishment is warranted, whether the added punishment should be precisely quantified.

　　Surely no added deterrent effect is achieved; it is unimaginable that a potential offender, contemplating a section 793(e) offense involving unauthorized receipt of classified documents, would carefully confine his offense to merely "secret" documents to avoid extra punishment for "top secret" documents.  And, even if added punishment is sometimes justified simply to reflect the increased seriousness of the offense, what penological purpose is served by requiring the added punishment for <u>every</u> offense involving "top secret" documents and quantifying the added punishment by <u>always</u> requiring 5 additional offense levels?  In Criminal History Category I, those 5 added levels (from 30 to 35 (for section 2M3.2)) increase the minimum Guidelines sentencing range by nearly 6 years (from 97 months to 168 months).  True, the rigidity and artificial precision of the Guidelines is now ameliorated by their advisory nature, but the Guidelines calculation still must be the beginning of all sentencing decisions, and, for many sentencing judges, it is also the end of the process.

　　In specific instances where added punishment is warranted because the offense involves "top secret" documents, a sensible Guidelines provision would simply authorize the sentencing judge to increase the base offense level by some number of levels within an appropriate range, perhaps 1 to 5 levels.

(1) 29, if top secret information; or

(2) 24, otherwise.

Id. § 2M3.3.

A somewhat similarly worded guideline, section 2M3.1, covers "Gathering or Transmitting National Defense Information to Aid a Foreign Government" and specifies base offense levels of 42 and 37, depending on whether the information is "top secret." See U.S.S.G. 2M3.1. This guideline is evidently designed to correlate with 18 U.S.C. § 794, which is entitled "Gathering or delivering information to aid a foreign government."

The Commission's thinking in making the distinction between conduct covered by sections 2M3.2 and 2M3.3 is not obvious. The former is explicitly limited to "gathering," but the latter, carrying lower base offense levels, covers some conduct of seemingly equal seriousness, such as "disclosure to a foreign government . . . of classified information by a government employee." U.S.S.G. § 2M3.3 (bold face and underlining removed). Indeed, it is difficult to understand why "disclosure to a foreign government" is within section 2M3.3, the most lenient of the three guidelines, at the same time that "transmitting . . . to aid a foreign government" is within section 2M3.1, the most severe of the three.

In any event, what is clear is that the second most severe guideline of this trio, section 2M3.2, covers "gathering" classified

information, and the least severe of this trio, section 2M3.3, does not cover "gathering" such information.

The indictment to which Malki pled guilty charged that he knowingly and willfully "retained" national defense documents in violation of section 793(e).  Neither of the two guidelines that the Commission has cross-referenced to section 793(e) explicitly covers "retain[ing]" classified documents.[4]  However, section 2M3.3 explicitly covers "unauthorized receipt of classified information."  Since the conduct of "retain[ing]," which Makli acknowledged in his guilty plea, is similar to "unauthorized receipt" and significantly different from "gathering," it seems clear that section 2M3.3, rather than section 2M3.2, is the appropriate guideline for his case. See United States v. Aquino, 555 F.3d 124, 130-31 (3d Cir. 2009).[5]

---

[4]The Commission's commentary does not resolve our issue.  The commentary to section 2M3.2 provides: "If the defendant is convicted under 18 U.S.C. § 793(d) or (e), § 2M3.3 may apply," U.S.S.G. § 2M3.2, comment. (n.2) (emphasis added).

[5]There is another basis for deeming section 2M3.3, rather than section 2M3.2, applicable to Malki's offense of conviction.  This basis concerns mens rea.  The substantive statutory provisions referenced in the commentary to section 2M3.2 are all five substantive subsections of 18 U.S.C. § 793, whereas the substantive statutory provisions referenced in the commentary to section 2M3.3 are only sections (d) and (e) of section 793. See U.S.S.G. § 2M3.2, comment; id. § 2M3.3, comment.  The distinction might arise from differing mens rea requirements.

Section 793(a) punishes obtaining various national defense information "with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation," section 793(b) punishes obtaining other national

-12-

The Government concedes that the District Court was not permitted to consider Malki's relevant conduct or to rely on the PSR's finding that Malki "actively gathered" the classified material in order to select § 2M3.2 as the relevant guideline.  See Government's Br. at 21.

---

defense information "with like intent or reason to believe," 18 U.S.C. §§ 793(a), (b) (emphases added), and section 793(c) punishes receiving various national defense information "knowing or having reason to believe . . . that it has been or will be obtained . . . by any person contrary to the provisions of this chapter," id. § 793(c) (emphasis added).   By contrast, sections 793 (d) and (e) punish willful transmittal or retention of various national defense items, such as code books and blue prints, without adding a requirement of intent or reason to believe that such transfer or retention is to be used to the injury of the United States or to the advantage of any foreign nation. Sections (d) and (e), however, impose the "reason to believe" element of sections (a) and (b) only with respect to transmittal or retention of what could be regarded as an intangible item, i.e., "information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation." Id. §§ 793(d), (e) (emphasis added).  The Commission has explicitly taken note of this mens rea element for some of the conduct punishable under sections (d) and (e): "If the defendant was convicted of 18 U.S.C. § 793(d) or (e) for the willful transmission or communication of intangible information with reason to believe that it could be used to the injury of the United States or the advantage of a foreign nation, apply § 2M3.2." U.S.S.G. § 2M3.3, comment. (n.2) (emphasis added). But see United States v. Rosen, 445 F. Supp. 2d 602, 614–17 (E.D. Va. 2006) (sections 793(d) and (e) apply to "information" whether tangible or intangible).

Thus, it is arguable that section 2M3.2 applies to a violation of section 793(e) only if the defendant transmitted or retained intangible information with the requisite mens rea.  On this theory, Malki, who was charged with retention of tangible documents and was not charged with the "reason to believe" mens rea element, would not be subject to section 2M3.2.  We need not embrace this theory since the applicability of only section 2M3.3 to Malki is made sufficiently clear by the statutory distinction between "gathering" and "retaining" discussed above.  We do suggest that the Commission might wish to clarify the coverage of these guidelines.

-13-

The Guidelines specify that the relevant guideline is the one "applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2(a). See Irving, 554 F.3d at 73.

The Government argues, however, that the District Court's selection of the improper guideline was harmless error because Judge Korman stated at sentencing that he intended "to impose a sentence within what I believe is the guideline range and which, I believe, is a reasonable one," and that "anything less would be inappropriate given the finding that he was gathering this material."

Despite a sentencing court's misapprehension of its authority, we will not remand where "the record indicate[s] clearly that the district court would have imposed the same sentence had it had an accurate understanding of its authority." United States v. Sanchez, 517 F.3d 651, 665 (2d Cir. 2008) (emphasis added); see generally United States v. Bermingham, 855 F.2d 925 (2d Cir. 1988). However, where the sentencing transcript leaves doubt that the District Court would have imposed the same sentence, remand is appropriate. See Sanchez, 517 F.3d at 666.

In the pending case, the selection of the wrong guideline cannot be disregarded since Judge Korman stated his intent to impose a sentence within the guideline range and did so, sentencing at the

-14-

bottom of what he considered to be the applicable sentencing range. Although he also stated that a lesser sentence would be "inappropriate," we cannot be confident that he would have imposed the same sentence had he understood that the bottom of the correct guideline was 58 months less than the bottom of the guideline he thought was applicable.

B. Obstruction-of-Justice Enhancement

Malki next contends that the District Court erred in applying a sentencing enhancement for obstruction of justice pursuant to section 3C1.1. Applying the relevant standards of review, see United States v. Bliss, 430 F.3d 640, 646 (2d Cir. 2005), we reject this claim. As detailed in the PSR, several facts support the enhancement including Malki's deleting cell phone records just before he was interviewed by Government agents, deleting emails after such interviews, falsely claiming to the District Court that he had taken documents from TQ by accident whereas he had stolen documents after leaving TQ, and representing to the Court that he had no criminal record when in fact there is a warrant outstanding in Massachusetts charging him with disorderly conduct, resisting arrest, and assaulting a police officer in 1997.

Equally without merit is the claim that the District Court failed to make explicit factual findings to support its imposition of the obstruction enhancement. Although "[t]he findings of the sentencing

-15-

court must be sufficiently specific to permit meaningful appellate review," United States v. Ware, 577 F.3d 442, 452 (2d Cir. 2009), "[a] district court satisfies its obligation to make the requisite factual findings when it explicitly adopts the factual findings set forth in the presentence report," and "[i]t may do so either at the sentencing hearing or in the written judgment it files later." United States v. Molina, 356 F.3d 269, 275-76 (2d Cir. 2004). In this case, the District Court adopted the PSR's findings at the conclusion of the Fatico hearing, see United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979), and in the written Statement of Reasons attached to its judgment. Moreover, the District Court adequately explained its reasons for the aggregate sentence it imposed. In view of the Court's adoption of the PSR's findings, that explanation need not have specifically mentioned the reasons for the obstruction enhancement.

C. Denial of Credit for Acceptance of Responsibility

The validity of the obstruction enhancement adequately supports the District Court's decision not to accord Malki a reduction in the adjusted offense level for acceptance of responsibility despite his guilty pleas. See United States v. Savoca, 596 F.3d 154, 159 (2d Cir. 2010); United Sdtates v. Giwah, 84 F.3d 109, 112 (2d Cir. 1996).

D. Reasonableness of Sentence

Finally, Malki contends that his sentence was unreasonable because the District Court failed to consider the sentences of

similarly-situated defendants, one of the factors listed in 18 U.S.C. § 3553(a). However, "[w]e presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged his duty to consider the statutory factors enumerated in § 3553(a)," United States v. Carter, 489 F.3d 528, 540 (2d Cir. 2007) (internal quotation marks and other alterations omitted), and "[t]here is no requirement that the court mention the required § 3553(a) factors, much less explain how each factor affected the court's decision," id. at 541 (internal quotation marks and alterations omitted).

## Conclusion

The case is remanded for resentencing so that the determination of an appropriate sentence, whether a Guidelines or a non-Guidelines sentence, will begin with the use of section 2M3.3 as the applicable sentencing guideline.