10-2971-cr
United States v. Watkins

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2010

(Submitted: June 24, 2011        Decided: January 26, 2012)

Docket No. 10-2971-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

ANTHONY WATKINS,

*Defendant-Appellant*.

---

Before:  MINER, MCLAUGHLIN, and POOLER, *Circuit Judges*.

Appeal from a judgment of sentence entered June 23, 2010, in the United States District Court for the Northern District of New York (Kahn, J.), convicting defendant-appellant, after a guilty plea, of transportation of a minor in interstate commerce with intent to engage in criminal sexual activity, and sentencing defendant principally to a term of imprisonment of 233 months, the court having applied the three two-level sentencing enhancements at issue pursuant to the Sentencing Guidelines because the offense involved: (1) the commission of a sex act; (2) use of a computer to entice a minor to engage in prohibited sexual conduct; and (3) misrepresentation of identity "to persuade, induce, entice, [or] coerce . . . a minor to engage in prohibited sexual conduct" and/or undue influence to engage in such conduct.

Affirmed.

Pooler, Circuit Judge, filed opinion concurring in part and dissenting in part.

Kevin A. Luibrand, Luibrand Law Firm, PLLC, Latham, New York, for Defendant-Appellant.

Elizabeth S. Riker, Assistant United States Attorney, for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York, for Appellee.

MINER, Circuit Judge:

Defendant-appellant Anthony Watkins appeals from a judgment of sentence entered June 23, 2010, in the United States District Court for the Northern District of New York (Kahn, J.). Watkins was convicted, after a guilty plea, of transporting a minor in interstate commerce with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). The District Court sentenced Watkins principally to a 233-month term of imprisonment. In reaching that sentence, the court applied three two-level sentencing enhancements pursuant to § 2G1.3 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") because the offense involved: (1) the commission of a sex act, U.S.S.G. § 2G1.3(b)(4)(A); (2) use of a computer to entice a minor to engage in prohibited sexual conduct, U.S.S.G. § 2G1.3(b)(3)(A); and (3) misrepresentation of identity "to persuade, induce, entice, [or] coerce . . . a minor to engage in prohibited sexual conduct" and/or undue influence to engage in such conduct, U.S.S.G. § 2G1.3(b)(2)(A) and (B).

On appeal, Watkins challenges the three sentencing enhancements and contends that his 233-month sentence is substantively unreasonable. For the following reasons, we conclude that the District Court did not err in applying the sentencing enhancements and in imposing a 233-month term of imprisonment.

**BACKGROUND**

The following description of the conduct underlying Watkins' conviction is drawn from the findings of the District Court, the court expressly having found the facts described in Watkins' Presentence Investigation Report ("PSR") supported by a preponderance of the evidence. These facts are not disputed on appeal.

At the time of the conviction of the offense charged, Watkins was 48 years' old, homeless, unemployed, and living in a baseball dugout at Schenectady County Community College in Schenectady, New York. By his own account, he supported himself by selling drugs and stolen property. From the age of 14, he had spent his life in and out of jail. Watkins was a frequent visitor to the public library in Schenectady. He often went there to use the Internet and to listen to free music on Jango.com. Jango encouraged social networking by identifying for each user other Jango users with similar musical tastes. Jango enabled its users to communicate with each other. In April 2008, Watkins began communicating through Jango with a fifteen-year-old girl, Jane Doe, a resident of Connecticut. The two shared an interest in rock music. Watkins initially communicated with Doe "a few times a week" using Jango, as well as MySpace and email.

On May 12, 2008, Doe informed Watkins that she was fifteen years' old and had a boyfriend. She asked Watkins if he "wanted her to talk all sexy to him and get him all horny and shit." Watkins said "thanks, finally, of course I do want you to . . . that's the point . . . remember I only live in New York so if you ever get brave enough . . . ." Watkins told Doe that "thinking about her at this innocent age is like an hour of wild sex already . . . ." Watkins asked Doe if she was a virgin, and she stated that she was. Watkins and Doe repeatedly discussed sex and what it would be like to have sex, often in graphic detail. They had "computer sex," "phone sex," and they "talk[ed] dirty" to each other online.

In Watkins' initial communications with Doe, he misrepresented his age, stating that he was 38 years' old when he was actually 48. He also misrepresented to Doe that he had two children (he actually had five) and that he was a former drug addict (by his own account, he

smoked marijuana "all day long, every day"). Watkins also "repeatedly told [Doe] that he loved her" and said "that he was waiting for her to get older so she could come live with him" in New York. Doe responded that "she loved him too."

Watkins made plans to travel to Doe's home in Connecticut on October 31, 2008, but he canceled the trip, explaining that his "check had not come." Nonetheless, Watkins promised Doe that he would visit the next day, Saturday, November 1, 2008, and sent Doe an electronic message stating:

> [D]on't be depressed, I will be there . . . . you got that[,] girl . . . . I am sad cause my money fucked me up; I would be in your panties by now . . . . I can't let you go so stay . . . . be my girl . . . . it's only [a twenty-year age difference], it's common for couples.

Watkins also asked Doe to keep her phone on so that when he arrived at her house she could "jump out the window" and he could "teach [her] the differences between fucking and making love," adding that he would "take great care of [her] wants and needs."

On November 1, Watkins drove from Schenectady to Connecticut, where Doe resided, and called Doe's cell phone when he arrived outside of her house. Doe answered but did not invite him in, explaining that "she and her family were members of the Jehovah Witness faith, and that her mother was very strict." Instead, Doe met Watkins at the end of her long driveway in the car that he was driving.[1]

The two began kissing as soon as Doe got into the car. Watkins asked Doe to perform oral sex on him, and she did. He then performed oral sex on her, and the two engaged in unprotected sexual intercourse. Doe's mother then called her on her cell phone, and Doe returned home, telling her mother that she had gone for a walk.

_____

[1] According to the government, the car that Watkins drove to Doe's house had been recently stolen.

-4-

Around 11 p.m. that same night, Watkins called Doe and told her that he was at the end of her driveway again. Doe sneaked out of her house and met Watkins in his car. Watkins then drove to a nearby park and parked near the woods, where he gave Doe four necklaces and two rings. Watkins and Doe had vaginal intercourse on the back seat of the car, but the two were interrupted repeatedly by phone calls from Doe's mother. To get away from Doe's mother, Watkins and Doe "suddenly decided to get on the highway and leave town." Watkins suggested that they travel to New York.

Watkins then drove Doe to New York, where he could engage in sexual intercourse with Doe without interruption. At some point along the way, Watkins parked along the roadside, and Watkins and Doe had sexual intercourse. They arrived in New York around 2:30 a.m. and stopped in the town of Niskayuna, where Watkins informed Doe that the car "had run out of gas." Watkins and Doe then abandoned the car in a parking lot and took a bus to Schenectady.

In Schenectady, Watkins told Doe that they should not go to his "home" because he feared that her mother or the police would find them there. He and Doe therefore spent time at Watkins' friend's house. They went for a free breakfast at a church and had lunch at a restaurant, which Watkins told Doe was also free. Later that day, Watkins took Doe to the same library where Watkins previously had accessed the Internet. While there, Watkins deleted all of his identifying information from the websites on which he and Doe had communicated, including his area code, picture, and last name.

The next day, Sunday, November 2, Watkins and Doe traveled to a Salvation Army store where they were given two sets of clothes and coats for free. Doe's boyfriend called her that day and tried to convince her to come home. Doe then told Watkins that she wanted to go home.

Watkins became jealous and unhappy with her. He told her that her boyfriend was not treating her well because he did not have sexual intercourse with her but only engaged in touching, which Watkins said was "kids' stuff." Nonetheless, Watkins took Doe to the bus station, though Doe was informed eventually that it was closed on Sundays.

That night, Watkins took Doe to the baseball dugout at Schenectady County Community College, where he "kept three blankets." They spent the night in the dugout and had unprotected vaginal intercourse three times. When they awoke the next day, November 3, Watkins and Doe had vaginal intercourse again. They then returned to the Salvation Army store for breakfast.

Later that same day, Watkins told Doe to call her family from his cellular phone, which she did. She told her father and sister that she was alright and that she would be home later in the week. Watkins and Doe then traveled back to the Schenectady Library. However, the police, acting on a tip, were at the library and arrested Watkins. Watkins refused to answer questions about whether he had engaged in sexual intercourse with Doe, but a forensic examination of physical evidence found at the baseball dugout where Doe and Watkins spent the night was abundant with proof: Watkins' sperm was found on a tampon worn by Doe, and DNA of both Watkins and Doe was found on the dugout blankets.

On November 17, 2009, Watkins pled guilty to Count One of a three-count Superseding Indictment for transporting a minor in interstate commerce with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a).[2] The United States Probation Office

---

[2] After his arrest, Watkins began writing letters to Doe and her family from jail. Apparently, the letters were initially benign but, as the trial date approached, they became more antagonistic. When writing to Doe's brother, Watkins called Doe a "cold hearted bitch" and wrote, "I don't care any longer about protecting her reputation or the family's privacy or the price of violating the [protective] order." He also wrote, "Phone numbers, every single number within your family. There are no such things as

(continued...)

thereafter prepared a PSR, which calculated Watkins' offense level at 31 and which included three two-level enhancements, pursuant to the Guidelines, because the offense involved: (1) the commission of a sex act, U.S.S.G. § 2G1.3(b)(4)(A); (2) use of a computer to entice a minor to engage in prohibited sexual conduct, U.S.S.G. § 2G1.3(b)(3)(A); and (3) misrepresentation of identity "to persuade, induce, entice, [or] coerce . . . a minor to engage in prohibited sexual conduct" and/or undue influence to engage in such conduct, U.S.S.G. § 2G1.3(b)(2)(A) and (B).[3] The PSR also recommended a two-level reduction for acceptance of responsibility and a one-level reduction for timely notification of intention to enter a guilty plea, pursuant to U.S.S.G. § 3E1.1(a) and (b), respectively. The PSR further calculated Watkins' criminal history level at VI based on his twenty-two prior state crime convictions, which included criminal possession of cocaine, theft, and possession of forged instruments and stolen property.

---

[2](...continued)
private numbers, addresses. No such thing as unlisted date of births. All information regarding your family. That's the result of your mom demanding blood from me."

[3] U.S.S.G. § 2G1.3(b)(2) provides:

If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels.

In relevant part, U.S.S.G. § 2G1.3(b)(3) provides:

If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct . . . increase by 2 levels.

In relevant part, U.S.S.G. § 2G1.3(b)(4) provides:

If (A) the offense involved the commission of a sex act or sexual contact . . . increase by 2 levels.

Based on the foregoing, the PSR determined Watkins' Guidelines range to be 188 to 235 months' imprisonment. In a letter dated May 11, 2010, Watkins objected to the PSR insofar as the base offense level included three two-level enhancements pursuant to U.S.S.G. § 2G1.3(b)(2)–(4), as set forth in more detail below. In an addendum to the PSR, the Probation Office addressed Watkins' objections but maintained its original recommendations.[4]

At sentencing on June 17, 2010, the District Court expressly adopted the PSR, and the government requested a sentence at the top of the Guidelines range. The court then imposed a sentence of 233 months' imprisonment stating: "The [c]ourt finds a high range sentence to be appropriate in this case, based on the high risk of recidivism that the defendant presents, his lack of remorse for commission of the instant offense, . . . [his] failure to grasp the gravity of [his] conduct and the future effect it may well have on the victim and, of course, . . . [his] lengthy criminal history."[5] The District Court also imposed a lifetime-term of supervised release and ordered restitution to be paid to the New York State Crime Victims Board in the amount of $2,589.34. This timely appeal followed.

On appeal, Watkins challenges the procedural reasonableness of the three sentencing enhancements imposed by the District Court and argues, in addition, that his 233-month sentence is substantively unreasonable. With respect to his procedural challenges, Watkins contends that: (1) the two-level enhancement for commission of a sex act was applied in error because it

---

[4] With respect to the U.S.S.G. § 2G1.3(b)(2) enhancement, the addendum concluded that Watkins "likely . . . misrepresented himself as ten years younger than his actual age in order to persuade the minor victim into having sexual relations with him, presumably in belief that if the age difference were not as great, she would be more likely to agree to engage in such conduct."

[5] Watkins' 233-month sentence included a two-month credit pursuant to U.S.S.G. § 5G1.3(b) for the time that he had already served in New York State custody on Schenectady County charges related to the instant offense.

constitutes "[i]mpermissible double counting"; (2) the two-level enhancement for use of a computer was applied in error because Watkins "did not use a computer to facilitate the travel of [ ] Doe"; and (3) the two-level enhancement for misrepresentation of identify "to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct" and/or for "unduly influenc[ing] a minor to engage in" such conduct was improperly applied.

As to the third contention, Watkins argues that (a) his age misrepresentation did not constitute "misrepresentation of a participant's identity," (b) the misrepresentation was not made to facilitate the travel of a minor, and (c) the District Court did not determine whether Watkins overcame Doe's "voluntariness." With respect to Watkins' substantive challenge, he contends that he should have received "a less harsh sentence within the [G]uidelines range" because, inter alia, he accepted responsibility for his actions, did not use force or violence against Doe, and because "Doe was an active, willing and voluntary co-conspirator."

**DISCUSSION**

I.    Standard of Review

"We are constrained to review sentences for reasonableness, and we do so under a deferential abuse-of-discretion standard." United States v. Conca, 635 F.3d 55, 62 (2d Cir. 2011) (internal citation and quotation marks omitted). "It is by now familiar doctrine that 'this form of appellate scrutiny encompasses two components: procedural review and substantive review.'" United States v. Bonilla, 618 F.3d 102, 108 (2d Cir. 2010) (alternation omitted) (quoting United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). Procedural error is identified

> when the district court (1) fails to calculate the Guidelines range; (2) is mistaken in
> the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give

-9-

proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation.

Conca, 635 F.3d at 62 (internal quotation marks omitted).

Upon substantive review, "[t]he length of the sentence imposed is what is examined," Bonilla, 618 F.3d at 108–09, and a trial court's sentencing decision should only be classified as error if it "'cannot be located within the range of permissible decisions,'" United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting United States v. Rigas, 490 F.3d 208, 238 (2d Cir. 2007)). "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." United States v. Friedberg, 558 F.3d 131, 137 (2d Cir. 2009) (internal quotation marks omitted). "Substantive reasonableness review can take place any time following procedural reasonableness review, including during the same appeal." Bonilla, 618 F.3d at 109 (citing Gall v. United States, 552 U.S. 38, 51 (2007)).

We review a district court's application of the Guidelines de novo, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error. Conca, 635 F.3d at 62. While a "district court must make findings with sufficient clarity to permit meaningful appellate review," United States v. Skys, 637 F.3d 146, 152 (2d Cir. 2011), this obligation may be satisfied by "explicitly adopt[ing] the factual findings set forth in [a defendant's] presentence report," United States v. Malki, 609 F.3d 503, 511 (2d Cir. 2010) (internal quotation mark omitted). We must accept a district court's findings of fact (through its adoption of the facts included in a PSR), unless they are clearly erroneous. See, e.g., United States v. Awan, 607 F.3d 306, 312 (2d Cir. 2010).

II.    Procedural Reasonableness

A.    Enhancement for Commission of a Sex Act

Watkins first challenges the District Court's imposition of a sentencing enhancement pursuant to U.S.S.G. § 2G1.3(b)(4)(A). This subsection of the Guidelines provides for a two-level increase in a defendant's offense level if "the offense involved the commission of a sex act or sexual contact." Watkins does not argue that the District Court clearly erred by finding that he committed a sex act with Doe during the course of the offense. Rather, he argues that the § 2G1.3(b)(4)(A) enhancement constitutes "[i]mpermissible double counting" because it "punishe[s] defendant for the same conduct which made up defendant's offense under 18 U.S.C. § 2423(a)." Appellant.'s Br. 10 (first alteration in original) (internal quotation marks omitted). We disagree.

"Impermissible double counting occurs when one part of the [G]uidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the [G]uidelines." United States v. Volpe, 224 F.3d 72, 76 (2d Cir. 2000) (internal quotation marks omitted). However, when the challenged part of the Guidelines "aim[s] at different harms emanating from the same conduct," there is no impermissible double counting. Id. "[E]nhancements are not duplicative when they reflect different facets of the defendant's conduct. . . ." United States v. Sabhnani, 599 F.3d 215, 251 (2d Cir. 2010) (internal quotation marks omitted).

Here, there was no impermissible double-counting. The District Court set Watkins' base offense level at 28 because of his violation of 18 U.S.C. § 2423(a), which prohibits the knowing transportation of "an individual who has not attained the age of 18 years in interstate or foreign

commerce, or in any commonwealth, territory or possession of the United States, <u>with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense</u>." 18 U.S.C. § 2423(a) (2006) (emphasis supplied). One may commit this offense without actually having committed a sex act. Therefore, given that Watkins transported a minor in violation of 18 U.S.C. § 2423(a), and the overwhelming and undisputed evidence demonstrates that he committed a sex act with Doe, a minor, the District Court's application of the § 2G1.3(b)(4)(A) enhancement is not error, let alone clear error. The enhancement punishes Watkins for committing a sex act, which would not otherwise be reflected at a base offense level of 28. Accordingly, we reject Watkins' challenge to the District Court's application of the § 2G1.3(b)(4)(A) enhancement.

B.     Enhancement for Use of a Computer to Entice a Minor

Watkins also challenges the District Court's application of U.S.S.G. § 2G1.3(b)(3)(A), which provides for a two-level enhancement if

> the offense involved the use of a computer or an interactive computer service to . . . persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct . . . .

Here, an addendum to the PSR, as expressly adopted by the District Court, concluded that Watkins "utilized [a] computer to communicate with the minor victim in order to arrange to meet her and to persuade, entice, and coerce her to engage in sexual activities with him." The PSR supported this conclusion by detailing the electronic messages that Watkins sent to Doe on October 31, 2008, the day before Watkins traveled to Doe's home. In those messages, Watkins asked Doe to keep her phone on so that when he arrived at her house she could "jump out the window" and he could "teach [her] the differences between fucking and making love." Based on

this electronic communication — and the PSR describes a number of other similar communications — the District Court did not commit clear error in finding that Watkins used a computer to persuade Doe to engage in prohibited sexual conduct.

We further reject Watkins' argument that the enhancement was applied in error because Watkins "did not use a computer to facilitate the <u>travel</u> of . . . Doe." Appellant's Br. 15 (emphasis supplied). Watkins contends that the term "the travel of" in § 2G1.3(b)(3)(A) is the object of the verbs "persuade, induce, entice, coerce, or facilitate." However, the plain language of the sentence indicates that the phrase "facilitate the travel of" is meant to be read separately from the terms "persuade," "induce," "entice," and "coerce," as each term is set off by a comma. The comma after "of" makes clear that "the travel of" is not the object of all of the preceding verbs. Further, it is linguistically awkward (at best) to refer to "the use of a computer . . . to . . . persuade . . . the travel of[ a] minor to engage in prohibited sexual conduct." A person does not "persuade" travel. Rather, the enhancement applies where, as here, a defendant uses a computer to "persuade, induce, entice, and coerce," a "minor to engage in prohibited sexual conduct." Accordingly, we reject Watkins' challenge to the District Court's application of the § 2G1.3(b)(3)(A) enhancement.

C.    Enhancement for Misrepresentation of Identity

Watkins also challenges the District Court's imposition of a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2), which provides:

> If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels.

Section 2G1.3(b)(2) sets forth a disjunctive test. Therefore, application of the enhancement is proper if the District Court did not commit clear error in finding that Watkins' conduct satisfied either subsection (b)(2)(A) or (b)(2)(B).

1. Subsection (b)(2)(A)

The PSR determined that Watkins "likely" misrepresented his age to Doe "in order to persuade [her] into having sexual relations with him, presumably in belief that if the age difference were not as great, she would be more likely to engage in such conduct." The record amply supports the District Court's adoption of this finding, and its application of the § 2G1.3(b)(2) enhancement was not error.

First, there is no dispute that Watkins knowingly misrepresented his age to Doe. Early on in their communications, Watkins told Doe that he was 38 years' old when he was in fact 48. Contrary to Watkins' assertion, this constitutes a knowing "misrepresentation of a participant's identity." See U.S.S.G. § 2G1.3, Application Note 3(A) ("The misrepresentation to which the enhancement in subsection (b)(2)(A) may apply includes misrepresentation of a participant's name, age, occupation, gender, or status[.]"); see also United States v. Walker, 595 F.3d 441, 445 (2d Cir. 2010) ("'[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" (quoting Stinson v. United States, 508 U.S. 36, 38 (1993))).

Second, the evidence in the record supports a finding that Watkins' primary (if not only) objective in communicating with Doe was to engage in "prohibited sexual conduct" with her. From the beginning of his interactions with Doe, Watkins made it clear that the purpose of his

communications was sexual in nature. When Doe asked Watkins if he "wanted her to . . . get him all horny and shit," Watkins said "thanks, finally, of course I do want you to . . . that's the point . . . remember I only live in New York so if you ever get brave enough . . . ." He also told Doe that when they met he would "teach [her] the differences between fucking and making love."[6]

Finally, on October 31, 2008, the day before Watkins had vaginal intercourse with Doe for the first time, Watkins sent Doe the following electronic message: "I would be in your panties by now [if I were with you] . . . . I can't let you go so stay . . . . be my girl," adding "it's only [a] twenty years [age difference], it's common for couples." (emphasis supplied). This communication — which followed months of graphic sexual discussions — provides direct support for the court's finding that Watkins misrepresented his identity (i.e., his age) in order to "persuade, induce, entice, [or] coerce . . . [Doe] to engage in prohibited sexual conduct," see U.S.S.G. § 2G1.3(b)(2)(A). Moreover, because the District Court expressly adopted the PSR, it was not required explicitly to spell out any further analysis. See United States v. Ahders, 622 F.3d 115, 119 (2d Cir. 2010) ("The district court is required to rule on controverted matters that will affect sentencing, but it may do so by adopting the recommendations of the [PSR].").

Finally, given the clear sexual context within which Watkins misrepresented his identity, we do not believe that the PSR's finding (and the District Court's adoption thereof) that Watkins

---

[6] This contemplated sexual conduct is clearly prohibited by New York law, see N.Y. Penal Law § 130.25 (McKinney 2009 & Supp. 2011) (providing that a person is guilty of rape in the third degree when, "[b]eing twenty-one years old or more, he or she engages in sexual intercourse with another person less than seventeen years old"), and constitutes "prohibited sexual conduct" under the Guidelines, see U.S.S.G. § 2G1.3, Application Note 1 (cross-referencing U.S.S.G. § 2A3.1, Application Note 1, which defines "prohibited sexual conduct" to include "any sexual activity for which a person can be charged with a criminal offense").

made such a misrepresentation "to persuade [Doe] into having sexual relations with him" is speculative, or that we are unable to have a meaningful opportunity for appellate review. Indeed, Watkins concedes that "misrepresentation of his age was part of his initial seduction of [ ] Doe." Def.'s Br. 14. Accordingly, application of the § 2G1.3(b)(2) enhancement under subsection (b)(2)(A) was not error.[7]

2.       Subsection (b)(2)(B)

Because we conclude that the District Court did not err in applying the U.S.S.G. § 2G1.3(b)(2) enhancement pursuant to subsection (b)(2)(A), it is not necessary to ascertain whether the enhancement was in error under subsection (b)(2)(B). Nonetheless, subsection (b)(2)(B), which provides for a two-level enhancement where a defendant "unduly influence[s] a minor to engage in prohibited sexual conduct," provides an independent basis for application of the enhancement.

Application Note 3(B) of § 2G1.3(b)(2) provides that "[i]n determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior," provided that:

> [i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.3(b)(2), Application Note 3(B).

---

[7] In making this determination, we also reject Watkins' assertion that application of the § 2G1.3(b)(2) enhancement constitutes error because Watkins' age misrepresentation was not made to "facilitate the travel of" Doe. Coming to this conclusion would require us to engage in the kind of textual analysis rejected above in our discussion of the § 2G1.3(b)(3) enhancement for use of a computer.

Watkins acknowledges that there is a presumption of undue influence in this case. However, he claims that the presumption was rebutted by evidence of Doe's "eagerness as a participant in [Watkins'] offense" and that such evidence demonstrated that Watkins failed to "compromise[ ] the voluntariness" of Doe. He further contends that the District Court erred in adopting, without further explanation, the PSR's conclusion that the § 2G1.3(b)(2) enhancement was applicable under the Guidelines. We disagree.

Watkins is 33 years older than Doe. Therefore, the PSR correctly concluded that there is a rebuttable presumption that Watkins "unduly influenced" Doe to engage in prohibited sexual conduct on the basis of their substantial age difference.[8] Further, it is clear that Watkins failed to offer any evidence rebutting the presumption on this basis and concedes that he "misrepresent[ed] his age [as] part of his initial seduction of Jane Doe." Def.'s Br. 14. Therefore, the District Court was free to make its finding of "undue influence," without further explanation, on the basis of the unrebutted presumption alone.[9]

Watkins' assertion that Doe actively was pursuing a relationship with him does not require a different conclusion, an argument considered and rejected by the PSR, and supported by a number of our sister circuits. See, e.g., United States v. Lay, 583 F.3d 436, 446 (6th Cir. 2009) (determining that the presumption of undue influence on the basis of substantial age difference was not overcome by, inter alia, evidence suggesting that the minor initiated communications and proposed meeting with the defendant); United States v. Miller, 601 F.3d

---

[8] A "rebuttable presumption" is defined as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence." Black's Law Dictionary 1306 (9th ed. 2009).

[9] See Fed. R. Evid. 301 ("[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption.").

734, 737–38 (7th Cir. 2010) (upholding undue influence enhancement on the basis of a substantial age disparity because the presumption was not rebutted by, inter alia, evidence that the minor had multiple prior sexual experiences and had taken the initiative in her relationship with the defendant).  Accordingly, given the substantial age difference between Watkins and Doe, the District Court did not err in finding that the rebuttable presumption was not overcome by alleged evidence of Doe's "eagerness" to participate in Watkins' offense.

Furthermore, and in addition to the "degree of undue influence" that can be presumed given the substantial age disparity between Watkins and Doe, see U.S.S.G. § 2G1.3(b)(2), Application Note 3(B), the evidence of record supports a finding of "undue influence," given Watkins' numerous instances of "manipulative behavior."  See Lay, 583 F.3d at 446 ("[T]he extent to which [a] defendant engaged in manipulative behavior . . . bear[s] on the question of whether the defendant has rebutted the presumption that he unduly influenced the minor.").  Here, Watkins picked Doe up at her home; gave her gifts, including four necklaces and two rings; took her to get free meals and clothing; told Doe that her boyfriend was not treating her well because he did not have sexual intercourse with her but only engaged in touching, which was "kids' stuff"; misrepresented himself as a former drug addict and as having only two children when, in fact, he smoked marijuana "all day long, every day" and had five children; and, of course, misrepresented his age as "part of his initial seduction of [] Doe."  Cf. United States v. Wise, 278 F. App'x 552, 563 (6th Cir. 2008) (summary order) (determining that the facts supported a finding of undue influence given that defendant provided the minor victim with clothes, meals, gifts, and picked her up at her home).

We also reject Watkins' assertion that the District Court erred in adopting the PSR's conclusion that the § 2G1.3(b)(2) enhancement was applicable without further comment as to the factual findings included therein. A district court that adopts the factual findings of a defendant's PSR is not required explicitly to provide any further analysis. See Ahders, 622 F.3d at 119 ("The district court is required to rule on controverted matters that will affect sentencing, but it may do so by adopting the recommendations of the [PSR]."). Accordingly, we reject Watkins' challenge to the District Court's application of the § 2G1.3(b)(2) enhancement under subsection (b)(2)(B).

III.    Substantive Reasonableness of Watkins' Sentence

Finally, Watkins argues that his sentence of 233 months' imprisonment is substantively unreasonable. He argues that he should "have been given a less harsh sentence within the [G]uidelines range because," among other reasons, he "accepted full responsibility for his actions" and "attempted to undo the harm" that he caused "by openly and immediately confessing to the crime and by cooperating with authorities in securing his own conviction." Appellant's Br. 17, 18. However, Watkins' sentence already includes a three-level reduction for cooperation, pursuant to U.S.S.G § 3E1.1, and the record reveals that he may have exacerbated the damage he had done by sending antagonistic letters to Doe and her family members after his arrest.

Watkins also contends that his sentence is unreasonably excessive because it was not reduced in light of the fact that no violence or force was used against Doe during the commission of the offense. Def.'s Br. 17. However, this fact does not require a reduction and is already reflected in Watkins' Guidelines-range sentence. Had Watkins used force against Doe, his

Guidelines-range would have been higher. See U.S.S.G. § 2G1.3(c)(3) (cross-referencing § 2A3.1, under which Watkins' offense level would have been at least 35, taking into account Watkins'§ 3E1.1 reduction for cooperation, regardless of the statute of conviction).

Finally, Watkins claims that his sentence is substantively unreasonable because he had no intention of harming Doe and because "Doe was an active, willing and voluntary co-conspirator." However, as the District Court found, Watkins "fail[s] to grasp the gravity of [his] conduct and the future effect it may well have on the victim." This finding is entitled to deference. It should also be added that the District Court did not commit clear error by basing Watkins' sentence at least in part on his "lengthy criminal history" (twenty-two state crime convictions) and what appeared to be a "high risk of recidivism."

Nothing in the record indicates that Watkins' sentence, which is at the top of the applicable Guidelines range, is outside "the range of permissible decisions." Cavera, 550 F.3d at 189 (internal quotation mark omitted). Accordingly, the District Court did not abuse its discretion by imposing a sentence of 233 months' imprisonment.

**CONCLUSION**

For the foregoing reasons, we affirm the judgement of sentence entered in the District Court.

POOLER, *Circuit Judge*, concurring in part and dissenting in part:

I respectfully dissent from the Court's decision to affirm the district court's imposition of a two-level sentence enhancement under Section 2G1.3(b)(2) of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines"). The district court applied this enhancement to Watkins's sentence without finding that his conduct qualified for the enhancement. This case should thus be remanded to the district court so that the court has an opportunity either to make the necessary findings that justify imposing the enhancement or else to resentence Watkins without it.

### I. Subsection (b)(2)(A)

A district court may apply the sentencing enhancement under Section 2G1.3(b)(2) if either one of two conditions is satisfied. The first condition, described in subsection (b)(2)(A), permits a district court to impose the enhancement if "the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(A).

A district court cannot, however, simply conclude that the enhancement should apply without finding that the defendant's conduct qualifies for the enhancement. *See United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010) (per curiam) ("A district court must make specific factual findings, by a preponderance of the evidence, to support any sentencing enhancement under the Guidelines." (internal quotation marks omitted)). With that said, "[a] district court need not specifically recite all the facts relevant to its Guidelines calculation; rather, it is sufficient for the district court to adopt the findings in the presentence report—*if* those findings are adequate to support the sentence imposed." *Id.*

1

There is no dispute that Watkins knowingly misrepresented his identity to Jane Doe by lying about his age. *See* U.S.S.G. § 2G1.3, cmt. n.3(A). But such a misrepresentation, standing alone, does not provide a basis to apply the enhancement. Subsection (b)(2)(A) requires a "knowing misrepresentation of a participant's identity *to* persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(A) (emphasis added). As the commentary accompanying the Guidelines makes clear, the misrepresentation must be "made *with the intent to* persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3, cmt. n.3(A) (emphasis added); *see also id.* ("[U]se of a computer screen name, *without such intent*, would not be a sufficient basis for application of the enhancement." (emphasis added)).

The district court adopted the findings contained in the presentence report, an addendum to which stated:

> The probation officer notes *it is likely* the defendant misrepresented himself as ten years younger than his actual age in order to persuade the minor victim into having sexual relations with him, *presumably in belief* that if the age difference were not as great, she would be more likely to agree to engage in such conduct.

App. 55 (emphasis added). But I do not believe that a district court's finding that a defendant's conduct "likely," *id.*, qualified for an enhancement is sufficient to support imposition of the enhancement. In order for subsection (b)(2)(A) to apply, a district court must conclude that "the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(A). While Watkins may have "likely" engaged in conduct that would

2

justify the imposition of the enhancement under subsection (b)(2)(A), App. 55, the district court never determined whether he did in fact misrepresent himself in order to engage in the sexual activity at issue or not. An equivocal finding—that a defendant's conduct *probably* qualified for a sentencing enhancement—is no finding at all in this context. In my view, it lacks "sufficient clarity to permit meaningful appellate review." *United States v. Skys*, 637 F.3d 146, 152 (2d Cir. 2011). The district court has deprived us of the opportunity to review its conclusion precisely because no definitive conclusion was ever made.

The Court overlooks this failing by making its own factual findings based on its own interpretation of the evidence. The Court states that "the evidence in the record supports a finding that Watkins' primary (if not only) objective in communicating with Doe was to engage in 'prohibited sexual conduct' with her." Majority Op. at 14-15. This might very well be true. Indeed, we might guess as to whether the court would have concluded that Watkins's conduct did in fact qualify for the enhancement. But I do not think we should affirm a defendant's sentence based on a hunch, even a strong one. *See United States v. Feldman*, 647 F.3d 450, 459 (2d Cir. 2011) ("[T]his Court cannot assume, without unambiguous indication to the contrary, that the sentence would be the same absent the error."); *cf. United States v. Crosby*, 397 F.3d 103, 117-18 (2d Cir. 2005) ("Perhaps in some cases an appellate court could make an educated guess as to the likely outcome of a remand, but that guess might be wrong . . . .").

## II. Subsection (b)(2)(B)

The Guidelines also permit a district court to impose the enhancement under Section 2G1.3(b)(2) if "a participant . . . unduly influenced a minor to engage in prohibited

3

sexual conduct." U.S.S.G. § 2G1.3(b)(2)(B). The relevant commentary for subsection (b)(2)(B) specifies: "In a case in which a participant is at least 10 years older than the minor, there shall be a *rebuttable presumption* that subsection (b)(2)(B) applies." U.S.S.G. § 2G1.3 cmt. n.3(B) (emphasis added). Moreover, whether or not the presumption applies, "the court should *closely consider the facts of the case* to determine whether a participant's influence over the minor *compromised the voluntariness* of the minor's behavior." *Id.* (emphasis added).

Watkins has argued that the evidence in the record, including the electronic communications between him and Doe, demonstrates that he did not compromise the voluntariness of her behavior. Specifically, Watkins argued that "[t]he text of the exchanges reveals a 15 year old who was actively pursuing a relationship with an older person." App. 53. Indeed, Watkins's counsel told the district court that "she's teasing him and . . . she talks about looking forward to having sex with him, telling him how much she loved him." App. 61.

Despite Watkins's objections, and his arguments that the evidence suggested that the enhancement should not apply, the district court made no effort to weigh the evidence and determine if Watkins had rebutted the presumption of undue influence. Instead, the court simply adopted the findings of the presentence report, the addendum to which stated: "A 15 year old cannot legally 'actively pursue a relationship with an older person.' She is not old enough to consent to such." App. 55. In effect, the district court concluded that the enhancement under subsection (b)(2)(B) should apply simply because Watkins was more than 10 years older than Doe and Doe was 15 years old at the time of the sexual activity.

This mandatory application of the enhancement under subsection (b)(2)(B) is wholly unsupported by either the Guidelines provision itself or the accompanying commentary. The

4

fact that Watkins was at least 10 years older than Doe merely raised "a *rebuttable* presumption that subsection (b)(2)(B) applies." U.S.S.G. § 2G1.3 cmt. n.3(B) (emphasis added). The district court made no effort to assess whether Watkins had rebutted that presumption.

If the Sentencing Commission had intended to make the enhancement mandatory for victims of certain age, it could have. Indeed, another enhancement under the same section of the Guidelines does just that, applying an eight-level increase to certain offenses "involv[ing] a minor who had not attained the age of 12 years." U.S.S.G. § 2G1.3(b)(5). In other words, the Commission specifically chose to create a mandatory enhancement based on the age of the victim under subsection (b)(5), which applies regardless of whether the defendant in fact compromised the voluntariness of the victim's behavior. The Commission perhaps concluded that a mandatory enhancement in such cases involving victims below 12 years of age was appropriate because such victims—as a general matter and without any inquiry into the particular facts of the case—are not old enough to agree voluntarily to engage in prohibited sexual activity with a person at least 10 years their senior. But no such mandatory enhancement applies to 15-year-old victims. And the district court cannot create such a rule itself. Such a policy decision is for the Commission and ultimately for Congress. Therefore, the district court erred by applying the enhancement under subsection (b)(2)(B) without finding that Watkins "unduly influenced" his victim. U.S.S.G. § 2G1.3(b)(2)(B).

The Court ignores this crucial error, finding that "it is clear that Watkins failed to offer any evidence rebutting the presumption." Majority Op. at 17. But that determination—that Watkins's evidence failed to overcome the presumption against him—is precisely the sort of factual finding that the *district court*, not a court of appeals, is required to make. If the district

5

court determined that Watkins had failed to rebut the presumption against him, it should have said so on the record. But the court never made such a finding. The Court's belated attempt to assess the evidence on behalf of the district court does not remedy the mistake.

## CONCLUSION

We should not affirm Watkins's sentence because the district court never made factual findings necessary to support the enhancement under either subsection (b)(2)(A) or (b)(2)(B). The Court attempts to sidestep the district court's errors by concluding that the enhancement was justified because the evidence *would have* supported a finding both that Watkins misrepresented his age in order "to engage in prohibited sexual conduct," U.S.S.G. § 2G1.3(b)(2)(A), and that he "unduly influenced a minor to engage in prohibited sexual conduct," U.S.S.G. § 2G1.3(b)(2)(B). But the district court never made or adopted such findings in the first place. The district court, not the court of appeals, is required to determine whether a defendant's conduct qualifies for a particular sentencing enhancement. We review a district court's decision for errors; we do not fix its mistakes.

For the foregoing reasons, I respectfully dissent from the Court's decision to affirm the district court's imposition of an enhancement under Section 2G1.3(b)(2) of the Guidelines. I join in the remainder of the Court's opinion.

6